Feb. 25, }
  1903. }

## OPINION OF THE JUSTICES.

The fact that no suit can be maintained against the state affords the legisla-
ture a proper occasion for requiring the advice of the court as to the validity
of a contract entered into in behalf of the state by the governor, with the
advice and consent of the council.

Under section 3, chapter 2479, Laws 1861, the governor, with the advice and
consent of the council, was authorized in 1897 to appoint an attorney to
prosecute before the proper tribunals the claim of the state as to the mat-
ters specified in that enactment, and to contract with him as to his compen-
sation.

At a session of the house of representatives held February 18,
1903, the following resolution was adopted :

*Resolved*, That the house of representatives requests the opinion
of the supreme court upon the following, namely :

*First :* Did His Excellency George A. Ramsdell, governor of
New Hampshire, have authority to make and execute the following
appointment and agreement in behalf of this state or otherwise ?

## "AGREEMENT.

" Memorandum of an appointment and agreement, made this
eleventh day of May, A. D. 1897, by and between the state of
New Hampshire by the Honorable George A. Ramsdell, its gov-
ernor, on the one part, and Horace S. Cummings, of Washington,
in the District of Columbia, on the other part, witnesseth :

" That the said state of New Hampshire, in consideration of the
things to be done by said Horace S. Cummings as hereinafter set
forth, hath appointed, and by these presents doth appoint, said
Horace S. Cummings its agent and attorney, to present, prosecute,
and recover before the congress, any department, the court of
claims, or the supreme court of the United States, any claim or
claims of said state against the United States, for costs, charges,
and expenses properly incurred by said state for enrolling, sub-
sisting, clothing, supplying, arming, equipping, paying, and trans-
porting the troops of said state, employed in aiding to suppress
the insurrection against the United States between the years 1861
and 1865, both inclusive, under an act of congress entitled 'An act
to indemnify the states for expenses incurred by them in the de-
fence of the United States,' approved July 27th, 1861.   And said
Horace S. Cummings shall have and receive for his legal services
in and about said matter a sum equal to fifteen per cent of the
entire sum collected, payable only out of any sums that may be

collected hereunder, and without any liability on the part of the state for expenses in connection therewith.

"And in consideration of the premises said Horace S. Cummings agrees to undertake the presentation and prosecution of said claims at the compensation above stated and without any liability on behalf of the state for his expenses in connection therewith.

"In witness whereof said state of New Hampshire has caused these presents to be signed by the said George A. Ramsdell, its governor, and its seal to be hereto affixed, and said Horace S. Cummings has hereunto set his hand and seal, the day and year first above written.

                    "The state of New Hampshire,
[Seal of state.]       "By GEO. A. RAMSDELL, *Govornor.*
                       "HORACE S. CUMMINGS."

1. The foregoing agreement and appointment was duly executed and delivered to said Cummings at the date thereof.

2. Said Cummings thereupon entered on the work of prosecuting the claim mentioned in said agreement before the honorable the secretary of the department of the treasury of the United States, the court of claims, and the congress of the United States.

3. The claim against the United States accrued to the state of New Hampshire between the years 1861 and 1864, and by the statute of the United States at the date of the agreement aforesaid had become barred by the statute of limitations of the United States, so that no judgment against the United States thereon could be obtained in any court of the United States. But not being a stale claim, it could be and was audited, allowed, and paid by the treasury department, under laws existing at the time Cummings' contract was made. The accounting officers of the department of the treasury claimed that said claim could not be audited because it was a stale claim, and such proceedings were had as is set forth in Vol. 36, Court of Claims Reports.

4. The treasurer of the state of New Hampshire in the year 1864 considered said claim as worthless, and the same was in the year 1865 carried to the deficiency account.

Said Cummings prosecuted the work of collecting said claims before the department of the treasury and the court of claims, which resulted in the auditing of said claim on behalf of the state of New Hampshire in the amount of $108,372.52; and thereafter the congress of the United States appropriated said sum on said audit, and the secretary of the treasury issued a warrant of the United States, payable to the order of the governor of the state of New Hampshire, for said sum, and delivered the same to said Cummings as the agent of said state.

Immediately upon the receipt of said warrant said Cummings transmitted by mail said warrant to the governor of the state of New Hampshire, enclosing therewith a copy of said agreement and appointment, and requested the governor to forward to him his check for the amount of fees due him as said agent in accordance with the terms of said agreement and appointment.

The governor did not comply with the request of said Cummings, but thereafter, to wit, on March 4, 1902, turned the said $108,372.52 into the treasury of said state of New Hampshire, where it was on the date aforesaid entered upon the books of the state and commingled with other moneys of the state, and has since been used and disposed of for state purposes.

Said Cummings protested that the moneys representing the fees aforesaid were not the proper moneys of the state of New Hampshire, but belonged to him by virtue of his contract of agreement and appointment; but said moneys have never been paid to said Cummings.

*Second:* Is said Cummings entitled to receive from the state fifteen per centum of the amount so collected and paid in to the state treasury?

*To the House of Representatives :*

In answer to the foregoing resolution, the undersigned, the justices of the supreme court, respectfully submit their opinions upon the questions therein contained.

As the claimant cannot sue the state under the contract of May 11, 1897, to which the resolution relates, and as no money can be paid him except by direction of the legislature (Const., *art.* 55; P. S., *c.* 16, *s.* 4; *Ib.*, *c.* 20, *s.* 1), it might be argued that the legality of that agreement was unimportant, and that the only question for the legislature to determine was one of expediency, upon which our opinion could not be constitutionally required. Const., *art.* 73. But assuming that it is the policy of the house to provide for the liquidation of this claim if it was legally incurred, we have considered the questions submitted as though they had arisen in an authorized suit. The fact that no suit can be maintained against the state affords the legislature a proper occasion for requiring our advice as to the legal validity of the contract in question.

By section 3, chapter 2479, Laws 1861, the governor, with the advice and consent of the council, was " authorized and empowered to negotiate, adjust, and settle all questions, accounts, matters, and things, between this state and the United States, in any way . . . growing out of . . . any contracts or expenditures which may be made for the public defence or the payment of

troops." The governor and council at the date of the appointment in question, this act being still in force, were therefore expressly authorized to negotiate, adjust, and settle any accounts or claims of this character then existing in favor of the state against the general government. That there were such claims appears to have been then contended, and is now established. The power so conferred, by necessary implication included authority to do whatever was reasonably necessary for its proper and efficient execution. It is not to be supposed the legislature understood the governor and council would, or could, personally perform all the services incident to the proper investigation, proof, and prosecution of such claims by the state. Such matters are commonly conducted by persons having special training, experience, and skill. The appointment of suitable persons to represent the state in the prosecution of its claim before the appropriate tribunals must, therefore, have been understood to have been embraced within the general terms by which power in the matter was conferred upon the executive. Evidence in support of this conclusion is furnished by chapter 4076, Laws 1865, in which the governor and council were empowered " to pay the authorized agent or agents employed by the state in prosecuting the claims of said state against the United States." No other statutory provision in the matter being found, this act appears to be a legislative recognition of the legal employment of " agents " for the purpose named, under the act first cited. We therefore conclude that the governor and council had authority, May 11, 1897, to appoint Mr. Cummings to prosecute the claim of the state in the matter in question, before the proper tribunals.

The authority to employ agents and other persons necessarily implies the power to contract with them for their compensation, according to the method usual in matters of the kind. *Bohanan* v. *Railroad*, 70 N. H. 526. There is nothing in the facts submitted to us establishing as matter of law that the provisions made were out of the usual course, or improperly induced. A contract between private individuals, in which the compensation was contingent upon success, might be claimed to be void as against good morals and public policy. *Edgerly* v. *Hale*, 71 N. H. 138, 150; *Butler* v. *Legro*, 62 N. H. 350. But the legislature can determine for itself what public policy requires or permits to be done, in the prosecution of claims in favor of the state. *Davis* v. *Commonwealth*, 164 Mass. 241. If there are reasons why the state should refuse to recognize and comply with the agreement made in 1897 by His Excellency Governor Ramsdell, legal ground therefor is not to be found in absence of power in the executive to make the appointment and agreement in question, or in any

objection arising as matter of law upon the facts stated to us. We, therefore, upon these facts, answer in the affirmative both questions submitted.

Whether under the provision of the constitution requiring the governor and council "from time to time, to hold a council for ordering and directing the affairs of the state, according to the laws of the land" (Const., art. 61), or under any power constitutionally inherent in the executive, in the absence of legislation, authority exists for the action taken in 1897, has not been considered.

FRANK N. PARSONS.
WILLIAM M. CHASE.
REUBEN E. WALKER.
JAMES W. REMICK.
GEORGE H. BINGHAM.

February 25, 1903.

*Edwin G. Eastman*, attorney-general, for the state.

*Streeter & Hollis*, for Cummings.