[Civ. No. 188.  Second Appellate District.—April 4, 1906.]

# T. S. C. LOWE, Respondent, v. ROY WHEELER OZMUN, Executor, etc., Appellant.

JUDGMENT—RES ADJUDICATA—IMMATERIAL AND COLLATERAL ISSUES.—
A judgment operates as an estoppel from further litigation only
as to such matters as were necessarily considered and determined;
and never upon immaterial or collateral issues upon which the judg-
ment does not depend.

ACTION FOR CONVERSION OF BONDS—FORMER JUDGMENT REFUSING
TO VACATE SALE OF STOCK—VALIDITY OF ASSESSMENT—COL-
LATERAL ISSUES AS TO BONDS.—In an action against an executor
upon a claim for the conversion of bonds by the testator, pledged
to him by plaintiff to secure a debt much less than their value, a
former judgment refusing, at suit of plaintiff and other stock-
holders against their officers, to vacate the sale of stock of a
corporation for an unpaid assessment, depending upon the ad-
judged validity of the assessment and of the proceedings for
the sale, is not conclusive upon a collateral issue between the
plaintiff and the testator, one of the officers defendants, as to the
conversion of plaintiff's bonds by him, tendered in connection with
averments as to the extent of bonds held by defendants at the time
of the assessment, and their bad faith in levying it, to increase
the value of their bonds, adverse findings upon which were not ma-
terial to the judgment rendered.

ID.—LAW OF CASE—DECISION UPON FORMER APPEAL—SUFFICIENCY OF
COMPLAINT—STATUTE OF LIMITATIONS.—The decision of this court
rendered upon a former appeal that the complaint stated a cause
of action and that the claim therein set out was not barred by
the provisions of the statute, is the law of the case upon a second
appeal.

ID.—AGREEMENT FOR PURCHASE BY PLEDGEE AT PUBLIC SALE—CON-
STRUCTION—INSUFFICIENT NOTICE—SALE NOT PUBLIC.—An agree-
ment permitting a purchase of the bonds by the pledgee at a
public sale is to be construed as contemplating a sale by public
auction in the manner and upon the notice to the public usual at
the place of sale with respect to auction sales of similar property,
for the highest price obtainable, and a purchase by the pledgee,
at a sale lacking any reasonable or customary notice of its time
and place, is not at public sale.

Id.—Contract of Purchase at Private Sale—Forfeiture not Permissible—Purchaser and Seller Required.—An agreement that the pledgee may become the purchaser at a private sale without notice must be reasonably construed, as comprehending more than a mere taking over by the pledgee of the property at such price as he might elect, which is in effect to declare a forfeiture, an agrement for which is invalid under section 2880 of the Civil Code. It must be taken as meaning a sale conducted in the manner followed as to private sales of property, which requires a seller and purchaser competent to contract with each other. A mere taking over of the property by the pledgee without any agreement with another competent to contract is not a sale.

Id.—Absence of Sale—Conversion—Improper Dominion.—The fact that there was no sale, public or private, does not preclude a conversion which takes place when the defendant exercises an improper dominion over the property, in exclusion of the plaintiff, or in defiance of his rights. Where defendant, on a specified date, notified plaintiff that he no longer held the property in pledge and asserted ownership thereof, and subsequently sold it as his own, his acts and declarations at that date amounted to a conversion of the pledged property, and changed his relationship thereto.

Id.—Waiver of Tender of Debt—Repudiation of Rights.—Where it appeared that the defendant refused to account to plaintiff for the bonds, and refused to recognize his right to redeem them, such conduct obviated any supposed necessity for a tender of the debt under section 515 of the Civil Code.

Id.—Appropriation of Bonds—Satisfaction of Debt—Tender not Required.—Since the claim of conversion rests upon the appropriation by defendant of the pledged bonds to his own use, the value of which exceeded the debt, this amounted in law to a satisfaction of the debt, and no tender thereof need be pleaded or proved, but the excess in value at the time of the conversion may be recovered.

Id.—Evidence not Prejudicial.—Where the recovery was based upon the original conversion by the testator, and the value of the bonds at that date, the admission in evidence of the account of the sale of the bonds, or of their value after the conversion, or of the acts of the executor, after the conversion, which were disregarded by the court in its judgment, was not prejudicial.

Id.—Construction of Findings.—Where the only conversion found was by the testator, in his lifetime, long prior to the appointment of the executor, a finding that the value of the bonds was a certain sum at the time of the conversion by defendant and said deceased. will be construed so as to disregard reference to the executor's conversion.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Ross Avery, and F. W. Burnett, for Appellant.

E. S. Williams, Lynn Helm, E. C. Bailey, and Oscar A. Trippet, for Respondent.

ALLEN, J.—Action for conversion. Judgment for plaintiff, from which judgment and an order denying a new trial defendant appeals.

The complaint, which appears to have been filed May 9, 1900, alleges that in 1896 plaintiff was the owner of certain bonds of the Pasadena Consolidated Gas Company of the value of $20,000, and bonds of the Pasadena and Mt. Wilson Railway Company of the value of $10,000; that at that date he pledged the same with A. M. Ozmun to secure an indebtedness of $10,801.66. That said Ozmun, on the tenth day of May, 1897, unlawfully converted said bonds to his own use, at which date plaintiff's indebtedness to Ozmun was $11,230.-86, and no more. That on the eleventh day of May, 1897, plaintiff demanded from defendant the said bonds, or the value thereof, less the sum so due and owing from plaintiff, and that Ozmun refused either to return· said bonds or pay their value to plaintiff, to the damage of plaintiff in the sum of $18,769,14, no part of which has been paid. That Ozmun died in 1899, and defendant who is the executor of the last will and testament of deceased, published notice to creditors; and thereafter plaintiff presented his claim duly verified for the above-named sum, which was rejected. A copy of said claim is attached to the complaint, which shows the indebtedness originally existing, the amount and value of the bonds, and the balance claimed to be due after deducting such indebtedness.

A demurrer to this complaint, which involves not only its sufficiency as a pleading, but also the bar of section 339, Code of Civil Procedure, was considered by our supreme court upon

appeal in *Lowe* v. *Ozmun,* 137 Cal. 257, [70 Pac. 87], and the complaint was there held to state a cause of action and that the claim therein set out was not barred by the provisions of the statute. After the coming down of the *remittitur* defendant answered, denying the material allegations of the complaint, and by way of a separate defense set up that the indebtedness mentioned in the complaint was evidenced by a note given by plaintiff to Ozmun in the year 1896, due in one day, which note contained a clause authorizing Ozmun to sell the collateral mentioned in the complaint at public or private sale, at the option of the payee, without advertising the same or demanding payment of the debt or giving notice, and authorizing the pledgee at such sale to become the purchaser. It is alleged that demand was made upon plaintiff for the payment of the debts, which being refused, on May 4, 1897, the pledgee caused to be published in the "The Evening Express" of that date, a notice that on May 10, 1897, at 2 o'clock P. M., he would sell said collaterals at public auction to the highest bidder; that pursuant thereto he sold the same for $4,748, being the full value of the bonds, and credited the same upon the note, and that the balance remains unpaid. And for a further defense defendant sets up the pleadings and records in an action, brought at some date not apparent of record, but before March 27, 1898, by plaintiff and other stockholders of the Consolidated Gas Company, a corporation, to vacate and annul a certain sale of stock of said gas company theretofore made on account of the nonpayment of a delinquent assessment levied upon such stock by the board of directors, basing their right of action, in part, upon the claim that the individual defendants to such action and directors of said corporation were the owners of a large amount of the bonds of said gas company, and that they had conspired together to levy such assessment for the sole purpose of increasing the value of such bonds, and without any other necessity for such assessment, and it was alleged in said complaint that Ozmun, on May 10, 1897, converted $20,000 of such bonds, the property of Lowe, to the use of himself, the said Ozmun, and that said bonds so converted were held as collateral to a debt of Lowe, and by such conversion all obligations of Lowe

to Ozmun had been satisfied; and that certain stock belonging
to Lowe sold at said delinquent assessment sale and thereto-
fore held by Ozmun for voting purposes until such indebt-
edness was satisfied, was the property of Lowe and should be
returned to him and certificates issued therefore.    In that ac-
tion the defendants denied the conversion, and alleged that
they had sold the bonds mentioned in the complaint as claimed
by Lowe in the manner proveded in the contract under which
they were held as collateral, and that the proceeds were in-
sufficient to pay such indebtedness.    The court in its findings
in that case found that the allegations of the defendants' an-
swer were true and that plaintiffs were entitled to take nothing
by said action, and that defendants were entitled to their costs.

As a further defense in this action, the defendant pleaded
the bar of the statute under the  provisions of subdivision 1
of section 339, Code of Civil Procedure.

Upon the trial of this case the trial court found that said
Ozmun unlawfully converted the bonds mentioned in the com-
plaint to his own use; that the plaintiff demanded their re-
turn, or their value, less the amount  due on said loan, May
11, 1897, which was refused; that Ozmun, after demand for
the payment of the debt secured by the collateral bonds, pub-
lished a notice, as alleged in the answer, that he would sell
said bonds on May 10th, without specifying the year; that
the space occupied by such notice was two and one-fourth by
two inches, with over one hundred words  printed therein;
that on the 10th of May, 1897, Ozmun sold the bonds to him-
self for $4,748, that being the only bid.    The court further
finds that the said sale was not made at public auction in the
manner and upon the notice to the public  usual at the place
of sale in respect to auction sales of similar property, and was
not made for the highest obtainable price; that said pretended
sale was not in good faith public-auction sale.

The court further finds that Ozmun thereafter claimed to
hold and own said bonds adversely to plaintiff, and claimed
that plaintiff had no right to redeem the same from said sale
upon payment of the amount due upon said note; that after-
ward, in 1898, Ozmun sold said Pasadena and Mt. Wilson
Railway Company bonds and received the price unto himself;

that in July, 1902, defendant, the executor, sold the gas bonds and received the price unto himself; that the value of said bonds so pretended to be sold on May 10, 1897, and the value of said bonds belonging to the plaintiff converted by defendant and said deceased, over and above said indebtedness was at the time of said conversion, $2,489.27; and plaintiff was damaged at the time of said conversion by said conversion in said sum, the same being the value of said bonds over and above the amount of said indebtedness, together with interest thereon from the date of conversion, May 10, 1897, to date, making a total of $3,621.88.

The court further found that none of the matters or things set forth in said complaint have been at any time the subject of litigation between the same parties in this action, in any action, in any court at any time; that there was an action brought, as alleged in the answer, and that the judgment therein rendered was as alleged in the answer, and is final. That plaintiff has not paid to the said defendant, or the said Ozmun, any money or property on account of the indebtedness recited in said amended complaint since or before the rendition of said judgment.

Appellant contends for reversal of the judgment upon various grounds. First, upon the defense of *res adjudicata.* This, we think, cannot be maintained. The action pleaded as an adjudication was essentially one to vacate a sale made by the corporation of certain stock belonging to the plaintiff, and incidentally as a basis to support their claim of bad faith in relation to such sale, and to establish that the officers making the assessment upon which the same was due were affected and controlled in their actions on account of their large holdings of bonds of the corporation, the value of which they were seeking to increase, and the allegations of the conversion of plaintiff's bonds was to establish the amount of the holdings of the bonds by the officers at the time of the assessment. In *Chapman* v. *Hughes,* 134 Cal. 654, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982], our supreme court has held that a judgment operates as an estoppel from further litigation only as to such matters as were necessarily considered and determined, and never upon immaterial or collateral issues; that the test proper

to apply in determining the materiality of the issues is to inquire whether or not the judgment is dependent upon such issue. If the findings upon any issue were erroneous and yet the judgment has support, then such issue is collateral. In this case the finding of the court that the assessment was properly levied and the sale regularly conducted was all that was required to support the judgment rendered; for it mattered not who owned the bonds or how they acquired them, if such delinquent sale transferred title to the stock the court was warranted in granting the relief given; and the judgment was fully supported by the findings, outside of any finding with reference to the bonds.

It is next contended that the sale of the bonds was made in pursuance of the contract contained in the collateral note. The finding of the court that the sale was not a public one, we think, has ample support in the testimony, lacking as it did any reasonable or customary notice of its time and place. A public sale of pledged property must be made by public auction in the manner and upon the notice to the public, usual at the place of sale in respect to auction sales of similar property and must be for the highest obtainable price. (Civ. Code, sec. 3005.) By section 3010, when so sold, the pledgee, or pledgeholder, may purchase at such sale. By section 3002 the pledgee must give actual notice to the pledgor of the time and place at which the property pledged is to be sold. By section 3003, notice of the sale may be waived by the pledgor at any time. Notwithstanding these provisions, our supreme court has determined in *Williams* v. *Hahn*, 113 Cal. 475, [45 Pac. 815], that the authority in a contract to sell at public or private sale, with or without notice, is a valid agreement, and that a sale of pledged property, at private sale, without notice, conveys title. This contract gave an optional right to the pledgee to sell, either at public or private sale. All of the elements of a public sale being omitted, and there having been no public sale, then the only sale which he was authorized to make was a private sale. This contract authorizing a private sale, without notice, must have a reasonable construction. The term "private sale" comprehends something more than a mere taking over of the property by the pledgee at

such price as he may elect to consider an offer. This is, in effect, but a declaration of forfeiture, an agreement for which is invalid under section 2889, Civil Code. To give effect to the contract, if possible, is our duty. The agreement, then, that the pledgee may become purchaser at a private sale must be taken as meaning at a sale conducted in the manner usually and ordinarily followed in relation to private sales of property. A sale of property is a contract, and like every other contract, requires an agreement between two or more. A mere taking over of the property without any agreement with another competent to contract is not a sale, in our opinion.

It is next insisted that there being no actual sale, there was no change of relation; hence, no conversion. Very eminent authorities have been cited by appellant which go to the extent claimed. In this state, however, the leading case of *Dodge* v. *Mayer*, 61 Cal. 420, and which is cited and approved in very many subsequent cases, establishes the doctrine that "it is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's rights? If he does, this is in law a conversion, be it for his own or another person's use.' . . . A mere claim of dominion, an intention intimated to interfere with goods under a pretense of right or authority, amounts to a constructive trespass." Osmun, on the 11th of May, 1897, occupied the relation of pledgee. On that date and thereafter he renounced that relationship and notified plaintiff that he no longer held the property in pledge, but asserted ownership therein, and acting upon that claim thereafter sold the property as his own. We think clearly that the acts and declarations of Ozmun on the eleventh day of May, 1897, amounted to a conversion of the property so pledged and changed his relationship thereto.

Appellant's next contention is that no recovery can be had because no payment or tender of the debt was proven. The court finds that from the 10th of May, 1897, Ozmun refused to account to plaintiff for said bonds and claimed that plaintiff had no right to redeem the same from said pledge. The

evidence as to the refusal of Ozmun to accept, on and after
May 10, 1897, money due upon the obligation of Lowe and to
turn over to him the securities, is very conflicting; but upon
this appeal we must assume, as found by the court, that Ozmun
refused to recognize plaintiff's right to redeem and so asserted
to him and his agents, which being true, under section 1515,
Civil Code, obviated the necessity of formal tender, even were
such tender essential to maintain this action. In addition to
all this, no tender of the debt was averred in the original com-
plaint, and the facts upon which the claim of conversion was
based—namely, that he had appropriated to his own use the
bonds, the value of which was in excess of the debt, which in
law amounted to a satisfaction of the debt—are clearly set
forth in the original complaint, and were before the supreme
court on the appeal mentioned, and that court held such com-
plaint to be sufficient, not only in that regard, but also upon
the question of the statute of limitations, and the same has
become the law of this case.

We find no prejudicial error in admitted evidence of the
account of the sale, or of the value of the bonds after the
conversion. The findings of the court show that nothing es-
tablished thereby was considered or had any weight in the de-
termination of the case—the judgment being only for the
value at the date of the conversion found to have been May
10, 1897, and without reference to the expenses of sale. Evi-
dence in relation to the executor's acts after the conversion
was not material, and the judgment is not dependent thereon
for support. Nor do we see anything conflicting in the
findings. It is true that the court in one finding says that the
value of the bonds converted by defendant and said deceased
was at the time of the conversion a certain sum, but the same
finding shows the conversion to have been made May 10, 1897,
years before the appointment of the defendant as executor;
and hence, reference to the executor's conversion may well be
disregarded.

An examination of the many other specifications of error
develops nothing which, in our opinion, would justify a re-
versal of the judgment. The judgment being for the value of
the bonds at the date of conversion, with a recoupment of

damages by crediting the amount of the debt at the date of such conversion, is, in our opinion, a proper judgment.

The judgment and order appealed from are affirmed.

Gray, P. J., and Smith, J., concurred.