[Civ. No. 10316. Second Appellate District, Division One.—March 10, 1936.]

J. B. LINDSEY, Respondent, v. COMMERCIAL DISCOUNT COMPANY (a Corporation), Appellant.

Don S. Irwin, Edward F. Parker and Don L. Warner for Appellant.

Laurence W. Beilenson, Robert H. Dunlap and George R. Larwill for Respondent.

ROTH, J., *pro tem.*—Plaintiff and respondent, hereinafter called dealer, in the conduct of a used-car business, had made arrangements with the defendant and appellant for financing in connection with the operation of the said business. These arrangements contemplated the financing of cars which were on dealer's premises classified as "floorings", as well as the financing of cars which were sold by dealer on conditional sales contracts, classified as "contract purchasers". To secure appellant for its loans on floorings, dealer executed to appellant certificate of ownership duly endorsed and a bill of sale, or a conditional sales contract, or a time draft and trust receipt, the legal effect of which, irrespective of which of the said forms of instruments was severally or jointly executed, is conceded to be that of a chattel mortgage. (*Pacific Finance Corp.* v. *Hendley,* 103 Cal. App. 335 [284 Pac. 736, 285 Pac. 1048]; *Bonestell* v. *Western Automotive Finance Corp.,* 69 Cal. App. 718 [232 Pac. 734].) To secure appellant on its contract purchases, dealer assigned to appellant the conditional sales contracts under which the cars were sold, in which assignment dealer guaranteed the terms of the respective conditional sales contracts. In addition to the specific written instruments mentioned, one or more of which accompanied each separate transaction, there was an additional understanding governing generally the relations between dealer and appellant, the nature of which, so far as it is pertinent here, specified the discount at which appellant would purchase the conditional sales contracts, set forth the reserve that appellant might hold from moneys due the dealer, and provided for a "holdout" account which was a

special or additional reserve account which appellant was authorized to set up on those transactions in which appellant felt that the car sold by the dealer was sold for more than a reasonable sales price, and as a consequence of which the purchaser's equity in the car was nil or so small as to make such a contract more than a usual hazard. The various instruments referred to gave to appellant the right to take possession of all cars covered thereby upon breach of any of their terms, the detailed nature of which it is not necessary to set out, since it is conceded in this action that appellant had the right to take possession when it did. (Secs. 2927, 2973, Civ. Code; *Harper* v. *Gordon*, 128 Cal. 489 [61 Pac. 84]; *Bank of Woodland* v. *Duncan*, 117 Cal. 412 [49 Pac. 414]; *Paladini* v. *Durchman*, 216 Cal. 212 [13 Pac. (2d) 731].)

On November 7, 1933, pursuant to its right to possession, appellant entered dealer's place of business and repossessed eleven cars, eight of which were floorings, and three contract purchases. After taking possession, dealer asserts that appellant converted the eleven cars, and as a consequence of this alleged conversion (which put dealer out of business) this action was brought in three counts, the first alleging conversion and asking damages, the second alleging usury and asking treble damages, and the third alleging balance due to the dealer on the reserve and holdout accounts, and asking for the amount of such balance. The jury before which the case was tried brought in a verdict for dealer on all three counts. On motion for new trial the judgment entered on this verdict was reduced, with dealer's consent, by striking out the amount which constituted the judgment on the second count, and deducting fixed sums from the judgments entered on the first and third counts. During the trial, appellant had moved for nonsuit on the three causes of action and also for directed verdict, and for judgment notwithstanding the verdict, all of said motions being severally denied. This appeal is from the judgment as reduced by consent of the respondent and from the order denying appellant's motion for judgment notwithstanding the verdict.

On the question of conversion, dealer, to use his own language, "relies upon . . . the offering of the automobiles for sale before anything was due, and also, as to one Buick, the driving of the same upon the streets of Los Angeles". In fairness to dealer it should be added that while only sugges-

tively comprehended in said statement, it clearly appears from his brief that he relies also upon such facts as moving the automobiles to the premises of a wholesaler in used cars, placing tags thereon and advertising some of them for sale. Generally speaking, it may be conceded that "any act of ownership or exercise of dominion over the property of another, in defiance of his rights, is a conversion of that property". (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 143 [134 Pac. 1157, 1158]; *Dodge* v. *Meyer,* 61 Cal. 405, 420; *Lowe* v. *Ozmun,* 3 Cal. App. 387, 394 [86 Pac. 729]; *Steele* v. *Marsicano,* 102 Cal. 666 [36 Pac. 920]; *Horton* v. *Jack,* 126 Cal. 521 [58 Pac. 1051]; *McCaffey Canning Co.* v. *Bank of America,* 109 Cal. App. 415 [294 Pac. 45]; *Jackins* v. *Bacon,* 63 Cal. App. 463 [218 Pac. 1027]; *Vuich* v. *Smith,* 140 Cal. App. 453 [35 Pac. (2d) 365]; *Hull* v. *Laugharn,* 3 Cal. App. (2d) 310 [39 Pac. (2d) 478].) In treating the question of conversion, we are, for present purposes, accepting dealer's theory that appellant had the right to take possession of the cars, but had no right "of any dominion over the property inconsistent with the rights of the mortgagor or with the relation which he justly sustains to the property . . . ". (11 Cor. Jur. 589.) In other words, appellant had the right to take possession of the property and to hold it, but at the time in question could do nothing further in enforcing its rights to collect its obligations. According to dealer's theory, "the conversion occurred at the time of the offering of the automobiles for sale, which, according to the evidence, was at least as early as November 9 when the cars were all found in the wholesale dealer's with tags on them exposed for sale with other automobiles, and certainly not later than November 17 when three cars were advertised for sale in the Los Angeles Evening Herald".

There is, however, no evidence sufficient to support the implied finding of the jury that the cars were offered for sale. It is undisputed that the cars were moved to the premises of the wholesaler and that tags were placed on them. What inscription the tags bore is left to the imagination. The record is entirely silent on this phase of the situation. The tags might have indicated that the cars were to be held. The fact that they were in the wholesaler's lot is no more inconsistent with the desire of appellant to store them, than if they had been kept in a storage garage. There is no pre-

sumption of law that appellant intended to do more than it had a legal right to do. The burden of proof is upon the dealer, and with reference to these items, the dealer has proved nothing except that appellant did what it had a legal right to do. It is also undisputed that an advertisement appeared in one of the newspapers advertising three of the cars for sale. This would undoubtedly under the authorities constitute a conversion of these three cars, if it were proved that appellant were responsible for the advertisement, but there is no such proof. There is no evidence (at least, our attention has not been directed to any, either in accordance with the rules governing appeals or otherwise) which shows authorization or ratification on the part of appellant, or any facts from which an authorization or ratification can be inferred in connection with such advertisement. There is no evidence to which our attention has been directed that those who did insert the advertisement were the actual, implied or ostensible agents of appellant for that purpose. ■ In fact, the advertisement, to the introduction of which in evidence objection was properly and seasonably made, was improperly introduced in evidence for lack of a sufficient foundation. As a consequence, there is no proper evidence that the cars were advertised.

Of the eleven cars possessed, eight were floorings, and three were contract purchases, as already stated. Under the arrangement between appellant and dealer, when a car covered by a conditional sales contract was repossessed, dealer was to be allowed thirty days in which to resell the same, and, if unsuccessful, such repossessed car at the expiration of the thirty-day period was to be reclassified as a flooring. When appellant took possession of the eleven cars on November 7th, this thirty-day period as to the three cars in question had not yet expired. Dealer, however, was notified by appellant that he might, if he desired, sell these three cars, or any or all of the eleven, and he actually did sell one of the cars and received the money therefor. It thus affirmatively appears that dealer's right to sell was not in any way violated as to said three cars by appellant's action in taking physical possession of the same on November 7th. Furthermore, it affirmatively appears from the record that none of the cars repossessed was sold until more than thirty days, or December 5, 1933, on

which date three were sold. The three cars sold on said date were "floored" cars.

The whole question of conversion arises by reason of dealer's claim that an accord and satisfaction had been reached between dealer and appellant on October 19, 1933, by the terms of which their interest accounts were settled to that date and for thirty days in the future. Dealer asserts that as a part of said accord and satisfaction, appellant agreed to give him a thirty-day period of grace as to each of the contracts involved. Whether this thirty-day period of grace applied to the principal due on the several contracts and to all the terms of the several contracts, or to just the principal and not any of the other terms, or to the principal and some of the other terms, does not appear. In fact, the evidence is decidedly meager as to whether or not the extension was ever granted, even as to the principal, and there is no question about the fact that the principal on each of the several contracts covering the eleven cars was in default on the date of November 7th, when possession of the said cars was taken, and for some time prior thereto. There is no question, according to dealer's own statement, that irrespective of such extension agreement, the mere taking of the cars on November 7th did not constitute conversion, since appellant could take such possession under covenants of its several contracts covering each respective car, other than that which gave the right to possession for default in payment of interest or principal. The effect of this concession on the part of respondent is to admit that there was no thirty-day extension granted as a part of the accord and satisfaction agreement or otherwise as to all of the terms of the several contracts, but that at most, the extension agreement was granted only as to the principal of the several contracts. In short, if it were not for the so-called extension agreement, which the jury impliedly found to have been made in accordance with dealer's contention, dealer, except as to three of the eleven cars which were "contract purchases" would have no basis whatsoever upon which to base a claim of conversion. As heretofore pointed out, the evidence on the accord and satisfaction and on the extension agreement arising therefrom is not satisfactory. A dispute existed as to who owed whom, which resulted in testimony as follows: " . . . we went over the figures together, and Mr. Trapp doing most of the figuring,

and where they said we owed them about $400 when we went in, and we claimed they owed us $200, it ended up by us giving them a check for $95.90 . . . " The dealer then asked: "Now, Louie, does that pay everything?" to which appellant replied: "Yes, it pays interest up to the next month 30 days. Yes." According to dealer, the following also took place: "I don't see how we could possibly owe you that much money, but I am going to advise him to pay it on the understanding that this pays all the interest, *renews the flooring for thirty days. . . .* " (Italics ours.)

It is also worth noting that in the conversation which took place between the agents of appellant and dealer on November 7, 1933, at the time when appellant took possession of the eleven cars to which evidence our attention is specifically directed, nothing was said by dealer calling attention to the extension, which he now claims. In our opinion, the most that can be said for the so-called extension is that appellant agreed that it would not declare a default and exercise its rights because of nonpayment of principal. Indeed, the record shows that the facts actuating appellant in its course of action were an alleged misrepresentation by dealer of the amount of a down payment received by dealer on a "contract purchase", and the unsatisfactory manner in which dealer conducted his business, resulting in a failure to comply with other terms of the contracts covering the various cars. There is nothing to warrant a finding that the other terms of the contract were extended. These other terms granted ample authority to appellant to take possession when it did, which authority appellant concedes, and in addition authorized appellant to do any of the things which are now complained of as a conversion.

The judgment on the third cause of action was reduced by the trial court with the consent of dealer from $2,000 to $1184.49. Without going into detail as to the facts, an analysis of the record reveals that there was admittedly $346.98 held for dealer in the reserve account, and that dealer, according to his testimony, would be entitled to $837.51 from the holdout account, if the contracts covering the cars were paid in full. On the latter item there is no proof whatsoever that the contracts ever were paid in full. The only proof of anything due to dealer at the time of trial in excess of $346.98 is the admission in Paragraph II of appellant's "2nd

cause of action in counterclaim'' that there was a total credit in dealer's favor of $690.38. Dealer, before he can recover the amount of $1184.49, must allege and prove that it had actually accrued under the contracts and that demand had been made therefor. (*Monson* v. *Fischer*, 118 Cal. App. 503 [5 Pac. (2d) 628]; *Tatum* v. *Ackerman*, 148 Cal. 357 [83 Pac. 151, 113 Am. St. Rep. 276, 7 Ann. Cas. 541, 3 L. R. A. (N. S.) 908]; 1 Cal. Jur. 378; 6 Cal. Jur. 482.)

The order denying motion for entry of judgment notwithstanding the verdict is appealed from generally and not as to each separate cause of action. Such order is therefore affirmed. The judgment is reversed and the cause remanded for a new trial.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 7, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1936.