[S. F. No. 16103.   In Bank.—March 16, 1939.]

JOHN K. GRUBER, Respondent, v. PACIFIC STATES SAVINGS AND LOAN COMPANY (a Corporation), Appellant.

John L. Mace and Roy D. Reese for Appellant.

Milo Ayer and Pierce & Sherwin for Respondent.

WASTE, C. J.—In this action for the conversion of personal property the jury returned a verdict for the plaintiff in the sum of $1500, together with interest in the amount of $420. From the judgment entered thereon in the aggregate of said sums the defendant prosecutes this appeal.

The facts are not in serious dispute. However, a divergence of opinion does exist between the parties as to the application of legal principles to such facts. Briefly, it appears that in April, 1932, the plaintiff rented from the defendant

a portion of certain premises known as the Bilger Quarry property located in Oakland and consisting, in the main, of a lot, barn and corral. The agreed rental was $15 a month. Plaintiff paid the first month's rental and went into possession of the demised premises by storing certain road grading equipment in the corral and certain halters, harness, collars and other horse fittings in the barn. In order to insure the safekeeping of the equipment last above mentioned plaintiff nailed and otherwise secured all doors and windows to the barn with the exception of one door to which he retained the only key. Plaintiff failed to pay any rental for the second, third and fourth months of his tenancy, aggregating $45, whereupon the assistant cashier of the defendant lessor addressed a letter to the plaintiff on July 25, 1932, notifying him that unless the delinquent rentals were paid in full within two days thereafter all of plaintiff's equipment located in the demised premises would be advertised and sold to discharge such indebtedness. The letter also stated that "the only way in which you can have your equipment *released* is by the payment of your rental in full. . . . " On July 29, 1932, two days after the dead line specified in the letter for the advertising of such threatened sale the plaintiff called at the defendant's Oakland office and requested of the author of the letter further time for the payment of the rent and objected to the threatened sale of his equipment. The request was refused and plaintiff was again informed that only the payment of the rent would obviate the sale of his personalty.

It appears from the plaintiff's testimony upon the trial, that some time later he called at the quarry and requested the watchman or overseer maintained there by the defendant lessor (apparently to protect the entire property only a portion of which was leased by the plaintiff) to allow him to remove a portion of his equipment. This request was refused with the statement that plaintiff would have to see the defendant's assistant cashier who had written the letter referred to above. The denial or contradiction of this portion of plaintiff's testimony by the defendant's watchman was resolved against the defendant by the jury. Plaintiff thereupon telephoned to the defendant's Oakland office and renewed his request for permission to remove a portion of his property. Again, he received an adverse reply. The ultimate fate of plaintiff's equipment is not definitely disclosed by the record, but it does appear that the defendant lessor thereafter sold

the real property to a third person, that the barn was torn down and that whether then lost or destroyed or at some other time, no part of plaintiff's equipment ever again reached his hands or possession. Plaintiff and experts called by either side testified as to the market value of the equipment at the conclusion of which a verdict in the amount above mentioned was returned for the plaintiff.

■ Throughout the trial and upon this appeal the defendant has maintained, in effect, that the equipment at all times remained in the plaintiff's exclusive possession, that it did not through its agents seize or take said personalty to the exclusion of its owner and that, at best, the evidence merely discloses a threat to convert which is insufficient to support the jury's implied finding of an actual conversion. The contention lacks merit.

The evidence discloses not only a written threat to convert plaintiff's property but also repeated refusals of the agents of the defendant lessor, in the immediate proximity of the equipment and elsewhere, to permit the plaintiff to remove his equipment from the premises, a right which, as the owner thereof, he was entitled to enjoy without interference from the defendant or its agents. ■ Plaintiff was not required to resort to physical violence to remove his property over the defendant's opposition thereto. In a somewhat analogous situation, it was held in *Donoghue* v. *Kremmel*, 121 Cal. App. 208 [8 Pac. (2d) 918], that where a lessor told the lessee to keep out of the demised premises and refused him permission to enter, a constructive eviction resulted and that there was no real difference between physically removing the lessee and preventing his entry. It was further declared that the lessee was "not obliged, nor is he encouraged by law, to wage a deadly conflict to obtain entry to the demised premises". The defendant's refusal in the instant case to permit the plaintiff to have access to his equipment or to remove the same while an arrearage in rent existed constituted an improper and wrongful exercise of dominion over the plaintiff's property in violation of his rights as owner and, as shall presently be shown, amounted to a conversion rendering defendant liable for whatever damage resulted therefrom—here, the market value of such equipment all of which, as indicated, was ultimately lost to the plaintiff.

■ As stated, the fact that plaintiff was in arrears in his payment of the rent of the demised real property did not

warrant defendant's exercise of dominion over plaintiff's personal property located on the premises. Adequate remedies exist to protect a lessor in such a situation. But, it is definitely settled in this state that a landlord has no lien on the tenant's property for unpaid rent. (*Citizens' Securities Co.* v. *Hammel,* 14 Cal. App. 564, 568 [112 Pac. 731] ; *Hitchcock* v. *Hassett,* 71 Cal. 331, 333 [12 Pac. 228].) It is not claimed that any was here reserved. ▮ Nor do we think that a manual taking or destruction is essential to a conversion. In 2 Tiffany, Landlord and Tenant, page 1673, the following appears: ''The landlord is, it has been held, guilty of conversion if he refuses to allow the tenant to remove his goods during the tenancy, or at a subsequent time when the latter has a legal right to do so. . . . ''

▮ It is settled that conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. (*Poggi* v. *Scott,* 167 Cal. 372, 375 [139 Pac. 815, 51 L. R. A. (N. S.) 925] ; *Byer* v. *Canadian Bank of Commerce,* 8 Cal. (2d) 297, 300 [65 Pac. (2d) 67] ; *Aronson* v. *Bank of America, etc.,* 9 Cal. (2d) 640 [72 Pac. (2d) 548] ; *Lindsey* v. *Commercial Discount Co.,* 12 Cal. App. (2d) 345, 349 [55 Pac. (2d) 896] ; *Hull* v. *Laugharn,* 3 Cal. App. (2d) 310, 315 [39 Pac. (2d) 478].) In the case last above cited, the rule is thus stated: ''Conversion consists in the unwarranted interference by defendant with the dominion over the property of plaintiff, from which injury to the latter results. . . . Dominion is defined in law lexicons as 'perfect or complete property or ownership in a thing' (Bouvier's Law Dict.) ; 'complete ownership; absolute property' (Anderson's Dict. of Law) ; and 'ownership or right to property' (Black's Law Dict.) '' The acts of the defendant's watchman and assistant cashier, in the immediate proximity of the equipment and elsewhere, in refusing to permit plaintiff to remove any portion thereof in furtherance of the written threat to sell all of the equipment, obviously precluded the plaintiff from using and enjoying his ''complete property or ownership'' of such equipment and definitely constituted an ''interference'' with plaintiff's ''dominion over the property'' within the meaning of the authorities.

As stated above, it is not necessary that there be an actual manual taking of the property. In *McCaffey Canning Co.* v. *Bank of America,* 109 Cal. App. 415, 424 [294 Pac. 45], it is stated, among other things, that ''Any wrongful assump-

tion of authority over chattels, inconsistent with another's right of possession or subversive of his vested interest therein, amounts to conversion. . . . An unjustified claim of title may amount to conversion. . . ."

In *Dodge* v. *Meyer*, 61 Cal. 405, 420, the rule is stated in the following form: " 'The action of trover being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, this is in law a conversion. . . . ' It is contended that Meyer never had possession of the wheat, never handled it, and therefore did not convert it. Some of the cases just above cited expressly held that this is not necessary. To these we add *Connah* v. *Hale*, 23 Wend. (N. Y.) 462, where it was held that to constitute a tortious taking it was not necessary that there should be an actual manucaption of the goods. A mere claim of dominion, an intention intimated to interfere with goods under a pretense of right or authority, amounts to a constructive trespass, and no demand is necessary before bringing an action of trover.''

*Lowe* v. *Ozmun*, 3 Cal. App. 387, 394 [86 Pac. 729], quotes the foregoing as the rule in this state. We repeat that the acts and conduct of the defendant, operating through its agents, improperly and wrongfully interfered with plaintiff's absolute ownership of and dominion over his equipment and constituted a conversion thereof which ultimately reacted to plaintiff's financial detriment.

■ In our treatment of the case we have regarded the relationship between the defendant and plaintiff as one of landlord and tenant. The record indubitably points to such a relationship and not to one of bailor and bailee. The complaint was framed on the theory that the relationship was that of landlord and tenant and the answer of defendant ''admits that . . . plaintiff entered into an agreement with the defendant for the rental of a certain portion of that certain property known and designated as the Bilger Quarry''. The evidence, the statements of counsel throughout the trial, the instructions of the trial court, and the briefs on appeal

were addressed exclusively to the theory of a landlord-tenant relationship between the parties. Among others, the trial court gave the following instruction: "You are instructed that a landlord who rents vacant land or a vacant building, has no lien or right to hold the personal property of his tenant as security for unpaid rent. If he does so, he is guilty of a conversion of that property. Any wrongful assumption of authority over another's personal property inconsistent with the owner's right of possession amounts to conversion." No objection is here voiced against such instruction and none inconsistent therewith was requested by the defendant. Nor did the defendant ask that an instruction be given on the theory of a bailor-bailee relationship. The agreement between the parties, as disclosed by the record, was not one of storage for hire which establishes the relationship of bailor and bailee but rather was one for the rental of real property which establishes the relationship of landlord and tenant even though, as here, it may be contemplated that the property will be used by the tenant solely for storage purposes.

In conclusion, it should be stated that there is ample evidence relating to value to sustain the verdict in the amount awarded. Any conflicts therein have been resolved against defendant by the jury. That plaintiff in his recital of the facts giving rise to this action disclosed that prior to the commencement thereof, he had stated, in an effort to persuade defendant not to sell his equipment to satisfy a $45 debt for rental, that said equipment represented "near one thousand dollars worth", did not preclude him upon the trial from giving his opinion as to the actual market value of such equipment at the time of conversion. Moreover, there is other evidence on the subject.

The judgment is affirmed.

Langdon, J., Edmonds, J., Curtis, J., Seawell, J., Shenk, J., and Houser, J., concurred.