EDWIN F. LOCHNER v. SILVER SALES SERVICE, INC., A CORPORATION DOING BUSINESS AS RELIABLE HOME EQUIPMENT COMPANY, A CORPORATION.

(Filed 10 May, 1950.)

**1. Trial § 21—**

A motion for a compulsory nonsuit challenges the sufficiency of the evidence to take the case to the jury and support a verdict for plaintiff.

**2. Principal and Agent § 7c—**

Where an agent has authority to hire employees for his principal, he has implied authority to contract with an employee as to his compensation according to the methods usual in such employment, and an employee hired by the agent will not be bound by limitations upon the agent's authority to contract in respect to compensation of which the employee has no knowledge or notice.

**3. Same—Whether agent authorized to hire employees had implied authority to agree to salary at annual rate held for jury.**

Plaintiff's evidence was to the effect that he was employed by defendant's agent on the basis of a salary at a stipulated annual rate, and that such agent had authority to employ persons on behalf of defendant. Defendant moved for nonsuit for want of evidence that the agent had authority to bind defendant to pay salary at a stipulated annual rate, and offered evidence that the agent was specifically instructed to hire persons solely on a commission basis. Plaintiff testified he had no notice or knowledge of such limitation. *Held:* Nonsuit was properly denied, the question of the agent's implied authority to bind defendant to pay compensation at a stipulated annual rate being for the jury.

**4. Master and Servant § 2a—**

A contract of employment will not be held void for indefiniteness when it stipulates the nature and extent of service to be performed, the place where and the person to whom it is to be rendered, and the compensation to be paid.

**5. Compromise and Settlement § 2—**

The acceptance of a lesser sum in full payment of a larger sum constitutes a settlement, but only as to those items of liability embraced in the settlement.

**6. Same—Whether claim sued on was included in checks accepted by plaintiff in discharge of liability held for jury.**

Plaintiff's allegations and evidence were to the effect that defendant promised to pay him a stipulated amount annually, the remuneration to be paid on the basis of weekly checks for a stipulated commission on sales made by plaintiff, with quarterly payments to make up the proportionate part of the annual salary. *Held:* The acceptance of weekly checks by plaintiff with stipulations above plaintiff's endorsement that the payment released the payer of all claims due to date, with accompanying voucher stipulating that the sums included in the checks covered no items except commissions and travel allowances, raises for the determination of the jury the question as to whether the weekly payments composed one account of liability and the quarterly payments another, and therefore whether the settlement included the claim for quarterly payments.

**7. Evidence § 36—**

Advertisements are improperly admitted in evidence against a party merely upon identification of the newspaper in which published, it being necessary to show that the party against whom they are sought to be admitted authorized or instigated publication.

**8. Evidence § 19—**

Printed matter is not competent to contradict or impeach the testimony of a witness when there is no evidence indicating that the witness had any connection whatever with such matter.

APPEAL by defendant from *Patton, Special Judge,* and a jury, at the November Term, 1950, of MECKLENBURG.

Civil action to recover compensation for personal services.

The pleadings and evidence of both parties disclose that the matters stated in the next three paragraphs are not in dispute.

At the times set forth below, the defendant, a domestic corporation, was engaged in retailing household equipment at Charlotte and other places in North Carolina through the agency of traveling solicitors, who made sales to customers residing on routes assigned to them. In September, 1948, Bernard A. Mollen was employed by defendant to manage its retail business at Charlotte, with express authority to hire, supervise, and discharge soliciting agents in the Charlotte area. At that time Mollen hired the plaintiff to serve the defendant as a soliciting agent in the Charlotte territory, and the plaintiff worked in that capacity upon a route assigned to him until on or about 18 January, 1949, when he was discharged.

At the end of each week of the employment, the defendant issued a bank check to the plaintiff bearing this notation: "Endorsement of this check is acknowledgment by payee that he has been compensated in full for all services to date." The plaintiff accepted and endorsed the checks, and collected and used their proceeds. The checks were accompanied by pay vouchers containing the underlying computations, and showing these two things: (1) that the sums included in the checks covered no items except commissions on sales and collections made for defendant by plaintiff, travel allowances for the operation of plaintiff's automobile in the defendant's business, and advancements made to plaintiff by defendant; and (2) that the defendant retained approximately one-tenth of the sum total of the travel allowance and the commissions during each week of plaintiff's employment to protect itself against what it called "reverts," *i.e.,* losses suffered by it on account of commissions paid plaintiff on sales subsequently becoming uncollectible. Each pay voucher was prepared on a printed form stipulating that "this payment releases the payer of all claims which are now due or may accrue in the future," and providing a space below the stipulation for the signature of the payee. The plaintiff signed his name upon such space in several instances.

The last transaction between the parties occurred more than two months after plaintiff's discharge, to wit, on 26 March, 1949. At that time the plaintiff made demand on defendant for payment of the compensation involved in this action, and the defendant repudiated such demand on the ground that there was no contract between the parties obligating defendant to pay any such compensation to plaintiff. The parties thereupon "adjusted the commissions" and settled the reserve account. This they did by crediting the plaintiff with additional commissions omitted from the checks and previous pay vouchers, and by offsetting such additional commissions and the reserve account against "reverts" arising after the termination of the plaintiff's employment and advancements made to plaintiff by defendant during the course of the employment. No check or money passed between the parties at this time, but defendant recorded the adjustment of the commissions and the settlement of the reserve account on an unsigned pay voucher form containing the stipulation quoted above.

This action arose out of differences between the parties respecting the remuneration accruing to the plaintiff for the services rendered by him to defendant. Their testimony with regard to this phase of the case was in sharp conflict.

The evidence for the plaintiff tended to show that the agreement between Mollen, the manager of the defendant's business at Charlotte, and the plaintiff in relation to this matter was as follows: Defendant was to remunerate the plaintiff for his services at the rate of $5,000.00 per

year. A part was to be paid weekly, and a part was to be paid quarterly. The portion due weekly represented commissions of 10 per cent on the amount of current sales and collections made for defendant by plaintiff, and the portion payable quarterly consisted of the excess of compensation for the quarter computed at the stipulated annual rate over the aggregate of the weekly payments of commissions made during the quarter. The defendant was to be permitted to reserve not exceeding one-tenth of the weekly commissions to safeguard itself against "reverts," but any adjustment in the recompense of the plaintiff necessitated by the withholding of such reserve was to be made by defendant at the time of subsequent weekly payments. The defendant was to grant the plaintiff a travel allowance of $10.00 per week in addition to the agreed compensation to aid plaintiff in operating an automobile in carrying on his work for defendant.

The evidence for plaintiff further tended to show that the stipulated compensation accruing to plaintiff upon the agreement during his employment by defendant totaled $1,515.71; that the commissions on the sales and collections made by him for defendant in that period aggregated $659.59; that the defendant paid the full amount of the commissions and automobile allowances amounting to an additional $150.00 to the plaintiff in the transactions evidenced by the checks and pay vouchers; that the defendant has refused to pay the plaintiff any part of the excess of the stipulated compensation over the commissions, leaving $856.12 unpaid on that item; and that the checks and pay vouchers did not include or refer to this item in any way.

The testimony for the defendant tended to establish that the defendant had expressly instructed Mollen to hire soliciting agents in the Charlotte area on a commission basis only and to set their compensation "at ten per cent on their sales, ten per cent on their collections, and $2.00 a day car allowance"; that Mollen obeyed these instructions implicitly when he hired plaintiff, and the agreement in controversy limited the plaintiff's compensation to the specified commissions and allowance; that these items totaled $848.08 during the period of plaintiff's employment, and the defendant paid this amount in full to plaintiff, leaving nothing due the plaintiff by it; and that, on the contrary, the plaintiff is indebted to defendant in the sum of $58.81 on account of unrepaid advancements made to plaintiff by defendant during the course of employment.

The jury returned this verdict:

1. Did the plaintiff and the defendant enter into a contract of employment under the terms of which the plaintiff was to receive payment for his services at the rate of $5,000.00 per year?

Answer: Yes.

LOCHNER *v.* SALES SERVICE.

2. If so, did the plaintiff accept payment from the defendant in full settlement for his services?

Answer: No.

3. If not, in what amount, if any, is the defendant indebted to the plaintiff?

Answer: $856.12.

4. Did the plaintiff and the defendant enter into a contract of employment under the terms of which the plaintiff was to receive compensation for his services on a commission basis without a guarantee?

Answer:

5. If so, in what amount, if any, is the plaintiff indebted to the defendant?

Answer:

The court entered judgment on the verdict, and the defendant appealed, assigning the denial of its motion for a compulsory nonsuit and the admission of certain evidence as error.

*Charles Truett Myers for plaintiff, appellee.*

*Frank H. Kennedy and P. Dalton Kennedy, Jr., for defendant, appellant.*

ERVIN, J. The motion of the defendant for a compulsory nonsuit challenges the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. *Graham v. Gas Co.,* 231 N.C. 680, 58 S.E. 2d 757.

The defendant insists initially that the action ought to have been nonsuited for lack of evidence that Bernard A. Mollen, the manager of its business at Charlotte, had any authority to bind it to pay the plaintiff "for his services at the rate of $5,000.00 per year."

The sole evidence at the trial relating to the power conferred directly upon Mollen by defendant to fix the compensation of the plaintiff came from wtinesses for the defense whose testimony indicated that the defendant had specifically instructed Mollen to employ soliciting agents on a commission basis only and to set their compensation "at ten per cent on their sales, ten per cent on their collections, and $2.00 a day car allowance." Hence, the evidence was insufficient to show that the defendant expressly empowered Mollen to make an agreement obligating it to pay the plaintiff "for his services at the rate of $5,000.00 per year."

But the testimony was ample to warrant the conclusion that Mollen had implied authority from the defendant to enter into such contract with plaintiff. The defendant expressly conferred upon Mollen the power to employ soliciting agents to work for it. Express authority in an agent to hire an employee for his principal necessarily implies power in the

agent to contract with the employee as to his compensation according to the methods usual in matters of the kind for which the employment is effected. *Strickland v. Kress,* 183 N.C. 534, 112 S.E. 30; *In re Opinion of Justices,* 72 N.H. 601, 54 A. 950. The authority of the agent in such respect is not impaired by private instructions of the principal limiting the matter of compensation, when the person hired has no knowledge or notice of such instructions. 2 C.J.S., Agency, section 105.

There is nothing in the record disclosing as a matter of law that the provisions respecting compensation as claimed by the plaintiff were out of the usual course in matters of the kind for which he was employed. Besides, he testified that he had no knowledge or notice of any limitation on Mollen's authority as to the matter of compensation. These things being true, the court did not err in submitting to the jury under the first issue the question of whether Mollen had implied authority to bind the defendant to pay the plaintiff the compensation in controversy.

Moreover, the court rightly rejected the contention of defendant that the contract depicted in the plaintiff's evidence was void for indefiniteness and uncertainty. An agreement for personal services is binding in law if it is certain and definite as to the nature and extent of service to be performed, the place where and the person to whom it is to be rendered, and the compensation to be paid. *Croom v. Lumber Co.,* 182 N.C. 217, 108 S.E. 735; 12 Am. Jur., Contracts, section 64.

The defendant maintains secondarily, however, that the refusal of the court to dismiss the action on a compulsory nonsuit must be held for error, even if the testimony of the plaintiff at the trial was sufficient to establish the proposition that Mollen had implied authority from defendant to make the contract in controversy. This contention is based on the theory that when the plaintiff accepted and used the checks, he necessarily became bound by the recitals of the checks and the accompanying pay vouchers to the effect that he had been compensated in full for all services. The defendant cites *Durant v. Powell,* 215 N.C. 628, 2 S.E. 2d 884; *Harris v. Kennedy,* 202 N.C. 487, 163 S.E. 458; *Walston v. Coppersmith,* 197 N.C. 407, 149 S.E. 381; *Dredging Co. v. State,* 191 N.C. 243, 131 S.E. 665; *DeLoache v. DeLoache,* 189 N.C. 394, 127 S.E. 419, and other decisions on this phase of the litigation.

It is undoubtedly true that the acceptance of a lesser sum in full payment of a larger sum is valid under G.S. 1-540, but the payment of one account is not the settlement of another. *Garland v. Improvement Co.,* 184 N.C. 551, 115 S.E. 164. What was said in *Aydlett v. Brown,* 153 N.C. 334, 69 S.E. 243, is apropos here. "We adhere to our former decisions that where a check is sent in full payment of an account, the creditor cannot accept and appropriate the check and afterwards recover the amount of any item which was a part of the account. Having elected

to take a part in satisfaction of the whole, he will be held to his agreement, but the principle of course does not apply to a transaction not embraced by the account. Whether it is or not may often be a question of law upon admitted facts, but sometimes the evidence, as in this case, may be such as to make it a question for the jury."

There was evidence in behalf of the plaintiff that commissions on sales and collections were payable weekly and composed one account or item of liability, and that the indebtedness in suit was payable quarterly and constituted another account or item of liability; and that the checks and pay vouchers covered the commissions only, and did not embrace the indebtedness in suit or any part of it. In consequence, the trial court did not err in leaving it to the jury to determine whether the indebtedness in suit was included in the alleged accord and satisfaction. *Youngblood v. Taylor,* 198 N.C. 6, 150 S.E. 614; *Standard Oil Co. v. Moore,* 195 N.C. 305, 141 S.E. 926; *Refining Corporation v. Sanders,* 190 N.C. 203, 129 S.E. 607; *Bogert v. Manufacturing Co.,* 172 N.C. 248, 90 S.E. 208.

Notwithstanding the conclusion that the plaintiff made out a case for the jury, the defendant is entitled to a new trial on account of the ruling of the trial judge in permitting the plaintiff to introduce in evidence over the objection of defendant advertisements published in the *Charlotte Observer* on 23 and 26 May, 1949, purporting to emanate from the defendant and offering to employ salesmen at a beginning compensation of $100.00 per week.

The advertisements appeared eight months after Mollen had hired plaintiff to work for defendant, seven months after Mollen had relinquished his post as manager of the defendant's business at Charlotte, and four months after the plaintiff had been discharged by the defendant. Manifestly, they had no relevancy whatever to the question of whether Mollen had agreed that the defendant was to pay plaintiff "for his services at the rate of $5,000.00 per year," or to the question of whether Mollen had been authorized by defendant to make any such agreement if he did in fact undertake to do so. *Brown v. Featherstone,* 202 N.C. 569, 163 S.E. 558.

Furthermore, no sufficient foundation was laid for the introduction of the advertisements. It is a basic principle of the law of evidence that "before any writing will be admitted in evidence, it must be authenticated in some manner—*i.e.,* its genuineness or execution must be proved." Stansbury: North Carolina Evidence, section 195. This rule applies to advertisements in newspapers. 22 C. J., Evidence, section 1138.

There was nothing at the trial to show that the defendant authorized the advertisements, or had anything to do with their appearance in the newspapers. The testimony identifying the newspapers, which contained the advertisements, as issues of the *Charlotte Observer* proved nothing

whatever except the naked fact that they were printed in that newspaper. It had no tendency to fix the defendant with responsibility for their preparation or publication. The advertisements were not properly receivable in evidence on account of the lack of preliminary proof that they emanated from the defendant even if they had been relevant to the issue. *Lindsey v. Commercial Discount Company*, 12 Cal. App. 2d 345, 55 P. 2d 896; *Mann v. Russell*, 11 Ill., 586; *Saenger Amusement Company v. Murray*, 128 Miss. 782, 91 So. 459; *Schaff v. Bourland* (Tex. Civ. App.), 266 S.W. 843; *State v. Low*, 192 Wash. 631, 74 P. 2d 458. The suggestion of plaintiff that the newspaper advertisements were admissible to contradict witnesses for the defendant is without validity; for there was no evidence indicating that any of these witnesses had any connection whatever with them.

These observations of Dean Wigmore are germane: "Printed matter in general bears upon itself no marks of authorship other than contents. But there is ordinarily no necessity for resting upon such evidence, since the responsibility for printed matter, under the substantive law, usually arises from the act of causing publication, and merely of writing, and hence there is usually available as much evidence of the act of printing or handing to a printer as there would be of any other act, such as chopping a tree or building a fence. There is therefore no judicial sanction for considering the *contents alone* as sufficient evidence." Wigmore on Evidence (3rd Ed.), section 2150.

For the reasons given, the verdict and judgment are vacated, and the defendant is granted a

New trial.