Feb. 1,
  1910.

## OPINION OF THE JUSTICES.

In the absence of specific legislative authority, the governor and council are not empowered to appropriate money from the state treasury, to be used in defraying the expense of litigation to which the state might properly become a party.

*To the Justices of the Supreme Court:*

Under the provisions of chapter 100, Laws of 1907, the New Hampshire Board of Trade and other parties interested petitioned

the railroad commissioners to fix the reasonable charges to be made by the American Express Company for transportation of goods and merchandise within this state, and pursuant to said petition, said commissioners fixed the reasonable charges for the aforesaid purpose; and the said company, under the provisions of said act, took an appeal from said decision to the superior court for Hillsborough county, and said appeal is now pending in said court.

Said Board of Trade and the other petitioners have requested the governor and council to direct the attorney-general to appear and prosecute said appeal, and that the further expense of said proceeding be assumed by the state of New Hampshire. The governor and council believe this request should be granted, provided they have the legal right so to do. But being in doubt respecting their duty in the premises, they ask the advice of the court, and submit the following questions:

1. Have the governor and council authority to direct the prosecution of said proceeding in the name of the state?

2. Have the governor and council authority to appropriate money from the state treasury for the above-named purpose, and if so, from what fund shall it be taken?

HENRY B. QUINBY,  <i>Governor.</i>

A. MELVIN FOSS,<br>
HENRY W. BOUTWELL,<br>
ALBERT ANNETT,        <i>Councilors.</i><br>
JAMES G. FELLOWS,<br>
LYFORD A. MERROW,

*To His Excellency the Governor, and the Honorable Council:*

The questions submitted in the foregoing communication relate to the power of the governor and council to direct the attorney-general, as the chief law officer of the state, to assume the prosecution of the suit against the Express Company, which is now pending upon appeal in the superior court for Hillsborough county, in behalf of the state and at its expense. If they have such power, as a matter of law, it is assumed from the language of the request that in their opinion occasion has arisen for its exercise.

Although the attorney-general is required to "act for the state in all criminal and civil cases in the supreme court [and in the superior court] in which the state is interested" (P. S., c. 17, s. 4), we do not deem it necessary or useful in this opinion to define the extent of his official duty, or to express our views upon the question, whether the interest of the state is technically such that it is his duty to represent the state or the people in the case referred to. If the state, through the attorney-general or under his supervision,

is to actively engage in this litigation and to manage and control the prosecution,—if such action is its right · and duty,—the expenses which would be thereby incurred might and probably would amount to a considerable sum ; and if upon investigation it should be found that no money in the public treasury could be used to defray those expenses, it is not probable the governor and council, if they have the power in a proper case, would deem it expedient to require the attorney-general to engage in this litigation. In the absence of means legally available to meet the necessary expenditures incident to the proper conduct of a suit of this character, there would seem to be little occasion to consider whether the state should be represented therein as a principal litigant; and in that event our answer to the first question would be of no practical assistance to the governor and council in the pending matter.

If, therefore, it is assumed that the nature of the suit in question is such that the attorney-general might be required to intervene in behalf of the state or the public, if the legislature had provided a fund for the payment of the expenses of such litigation, it becomes necessary to consider the second question submitted. In the constitution it is provided that "no moneys shall be issued out of the treasury of this state and disposed of (except such sums as may be appropriated for the redemption of bills of credit or treasurer's notes, or for the payment of interest arising thereon) but by warrant under the hand of the governor for the time being, by and with the advice and consent of the council, for the necessary support and defence of this state and for the necessary protection and preservation of the inhabitants thereof, agreeably to the acts and resolves of the general court." *Art.* 55 [56]. A similar provision is contained in article 5. From these provisions of the constitution it is clear that the governor has no authority to draw his warrant upon the treasury in a particular case, unless there is some existing act or resolve of the legislature authorizing such payment. In recognition of this fundamental principle, the legislature has provided that "whenever any money is due from the state to any person, by force of a general law, special act, or resolution, the governor is empowered, and it shall be his duty, with advice of the council, to draw his warrant upon the treasury therefor in favor of such person." P. S., *c.* 20, *s.* 1. Moreover, in 1909 it was enacted "that from and after the first day of September, 1909, no moneys shall be paid from the state treasury for any purpose, without a specific appropriation authorizing the expenditure." Laws 1909, *c.* 15, *s.* 1. The payment of claims against the state can only be justified by appropriate legislative action. *Opinion of the Justices,* 72 N. H. 601.

Our examination of the statutes, without the assistance of counsel by brief or argument, has not disclosed to us any legislative authorization for the payment from the treasury of money on account of the expense attending the preparation, trial, and general conduct of civil actions in court, in which the state might properly become a party. By chapter 168, Laws 1909, the last legislature specified with much particularity the "appropriations for the expenses of the state of New Hampshire for the year ending August 31, 1910." But the act contains no language which, when given its obvious meaning, would show an intention on the part of the legislature to appropriate money for the expenses of litigation of the character above suggested. In the appropriation for the attorney-general's department, an allowance of $300 is made "for enforcement of liquor laws." If the intention had been to raise money for the prosecution of such other suits of a public nature as the governor and council might think the public good required, it would have doubtless been expressed with as much clearness as the appropriation for the enforcement of the liquor laws. Evidently it did not occur to the lawmakers that occasion might arise when the governor ought to have the power to pledge the public credit for the vindication or establishment of public rights; or if it did, it may have been deemed wiser to withhold the power until the occasion should arise, which seems to have been the view of the legislature of 1901, when it passed a special act authorizing the payment of expenses to be incurred by the attorney-general in defending the rights of the people in the public waters of the state. Laws 1901, c. 121.

We feel compelled, therefore, to decline to return an answer to the first question, and to submit as an answer to the second our opinion that the governor and council are not authorized "to appropriate money from the state treasury for the above-named purpose."

FRANK N. PARSONS.
REUBEN E. WALKER.
GEORGE H. BINGHAM.
JOHN E. YOUNG.
ROBERT J. PEASLEE.

February 1, 1910.