740 P.2d 496

**James CASSELL and Idell Cassell, husband and wife, Plaintiffs/Appellees,**

v.

**GENERAL MOTORS CORPORATION, a foreign corporation, Defendant/Appellant.**

**No. 2 CA–CV 5844.**

Court of Appeals of Arizona, Division 2, Department A.

March 26, 1987.

Supplemental Opinion on Denial of Reconsideration May 12, 1987.

Review Denied July 14, 1987.

Ethan Steele, Russo, Cox, Dickerson, Butler & Russo, P.C. by J. Patrick Butler, Albert, Fein & Hameroff by James A. Fein, Tucson, for plaintiffs/appellees.

Kimble, Gothreau, Nelson & Cannon, P.C. by William Kimble, Tucson, for defendant/appellant.

OPINION

FERNANDEZ, Judge.

General Motors Corporation (GMC) appeals from a jury verdict against it in the amount of $75,000 compensatory damages and $100,000 punitive damages for breach of a settlement agreement and conversion. We affirm the compensatory award and reverse the punitive award.

Appellees James and Idell Cassell sued Paulin Motor Company (Paulin) and General Motors Corporation (GMC) in November 1983 for breach of contract, rescission, breach of warranty, negligence, consumer fraud and misrepresentation. The Cassells had purchased a 1983 Cadillac from Paulin in April 1983. On their first out-of-town

trip they experienced transmission problems and took the car to Paulin for repairs. On their next trip, the Cassells experienced the same problems, and they returned it to Paulin on July 19, 1983, for installation of a new transmission and new computer.

The car was not returned to the Cassells until September 9, 1983. During this period, Cassell was told numerous times that Paulin was waiting for parts and that it would be ready on various dates. Cassell began telephoning and writing the district service manager for GMC in California in an attempt to get the repairs performed. On July 27, 1983, Cassell found the car in Paulin's storage lot with a deep crease along the passenger side. Paulin agreed to repair the damage and to have it completed by July 29.

When he returned on July 29, Cassell was told that GMC had "countermanded" the order to install a new transmission. On August 6 the Cassells were provided a rental car at GMC's instruction. Throughout August 1983, whenever Cassell attempted to obtain the car, he was told that Paulin was "waiting for parts." On August 24, he met the GMC district service manager at Paulin's who reported that the mechanical repairs had been completed. Paulin still kept the car to complete some cosmetic repairs. On August 29, the Cassells were informed the car had suffered additional body damage at Paulin.

In late September, after they returned from a cross-country trip on which they had planned to take the Cadillac, the Cassells drove the car to Sierra Vista and experienced the same transmission problems as before. After that trip, the Cassells put the car in storage and never drove it again. They filed suit in November 1983 after GMC failed to respond to their request for rescission.

Trial was scheduled on their complaint for May 29, 1985. A week before trial, the parties agreed to settle. The terms of the settlement required Paulin and GMC to pay the Cassells $16,500 and to provide them with a 1985 Cadillac similar in equipment to the defective 1983 Cadillac which the Cassells were to return to the defendants. In the letter setting out the terms of the agreement, the Cassells' attorney stated that the settlement must be completed by June 28, 1985. In his letter confirming the agreement, Paulin's attorney indicated that the date was a term unilaterally inserted by the Cassells' attorney. GMC's attorney indicated in his letter that those were the agreed-upon terms.

Sometime in July Paulin and GMC sent checks for the cash payment agreed upon, but no new car was ever tendered to the Cassells. The checks were never cashed. On July 16, 1985, the Cassells filed a motion for leave to file a supplemental complaint alleging breach of the settlement agreement and conversion. On July 19, GMC's attorney instructed the Cassells to go to the Cadillac dealership and pick out a car. The Cassells chose a car, paid a $150 deposit on it, and were told to return on the following Tuesday to drive it away. On Tuesday they were told that GMC had refused to release the car.

The court granted leave to file the supplemental complaint on August 26, 1985, and the complaint was deemed filed that same date. The case was tried in February 1986 on the issues raised in the supplemental complaint. The day trial began, the Cassells settled with Paulin Motor Company.

On appeal, GMC complains that 1) it was improper to instruct the jury on conversion; 2) the jury was incorrectly instructed on the burden of proof with regard to punitive damages; 3) it was improper to allow the Cassells to introduce evidence on their underlying complaint; 4) it was improper to preclude GMC from showing that Paulin had settled with the Cassells; 5) the court improperly denied GMC's motion for mistrial; 6) the court improperly denied GMC's motion for new trial; and 7) the court improperly awarded the Cassells attorney's fees.

## CONVERSION

The jury was given a special interrogatory by which it was to indicate on what basis it awarded punitive damages, and the answer was that they were based on con-

version. GMC contends that the trial court improperly instructed the jury on the issue of conversion because the Cassells failed to prove any specific automobile was converted. We agree.

The settlement letter of May 29, 1986, reads as follows:

> Mr. and Mrs. Cassell have agreed to dismiss their lawsuit and release Paulin Motor Company and General Motors ... in consideration for the delivery to the Cassells of a 1985 Cadillac Eldorado, white in color, with a blue interior, with similar option features (of special concern to them is that it *not* have a vinyl top), with the same type of extended warranty as on their previously purchased car....

The parties agree that no specific automobile was ever produced that met that description.

Appellees contend that a specific automobile was identified when the Cassells were instructed to select one on July 19. The evidence does not support that contention. The supplemental complaint alleged that GMC breached the settlement agreement "by failing to tender delivery [of] a new vehicle as required by the settlement agreement." At trial the Cassells' evidence showed that they filed the supplemental complaint after they became frustrated because GMC not only did not produce a 1985 Eldorado but also never even indicated when it might produce one.

Cassell testified that on July 19, immediately after the supplemental complaint was filed, he was instructed to choose a vehicle. He then selected a 1985 Seville, a more expensive automobile than the Eldorado. On August 6, Cassell retrieved his deposit check since GMC had refused to release that vehicle, and on August 26, the trial court granted leave to file the supplemental complaint.

The Cassells' theory throughout trial was that GMC converted the 1985 Eldorado called for in the settlement agreement. During closing argument, appellees' attorney argued that in June 1985 the Cassells had the right to obtain the vehicle and that GMC converted it. He argued that the Cassells were told in July 1985 to "pick out another car, an alternative vehicle, not the Cadillac El Dorado [sic] called for under the settlement agreement, but a different one." The attorney contended that this incident was a new offer by the Cassells in an attempt to finally settle the case.

█ Additionally, the Cassells requested an instruction which read in part as follows: "The Plaintiffs contend that Defendant General Motors 'converted' the 1985 Cadillac El Dorado called for under the settlement agreement." That instruction was given. "[C]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Shartzer v. Ulmer*, 85 Ariz. 179, 184, 333 P.2d 1084, 1088 (1959), quoting *Gruber v. Pacific States Savings & Loan Co.*, 13 Cal.2d 144, 148, 88 P.2d 137, 139 (1939). The property involved in a conversion action, however, must be specifically identified. See *Stokes v. Stokes*, 143 Ariz. 590, 694 P.2d 1204 (App.1984); *Autoville, Inc. v. Friedman*, 20 Ariz.App. 89, 510 P.2d 400 (1973). Since no specific automobile was ever identified under the settlement agreement, it was error to submit the case to the jury on a theory of conversion, and the punitive damages award based on that theory cannot stand. Because of that finding, we need not address GMC's issues with regard to jury instructions on the burden of proof on punitive damages and on determining damages for conversion.

### EVIDENCE ON UNDERLYING COMPLAINT

GMC asserts that the trial court improperly permitted the Cassells to introduce evidence about the defective car they had purchased and the events that led to the filing of suit and entry into the settlement agreement. GMC argues the Cassells should have been limited to evidence on the breach of the settlement agreement only. The trial court permitted the evidence so the jury would understand the events leading to the settlement agreement. The parties were prohibited from testifying as to their reasons for entering into the agree-

ment, and the jury was instructed that it was not to consider any evidence relating either to damages which resulted from the purchase of the 1983 Cadillac or to any defects in the car in determining the Cassells' damages.

■ We find that the evidence was properly admitted to permit the Cassells to present the "complete story" to the jury. *See State v. Price*, 123 Ariz. 166, 598 P.2d 985 (1979); see also *Nixon-Foster Service Co. v. Morrow*, 41 N.M. 67, 64 P.2d 92 (1936). The evidence was also relevant on the issue of GMC's intent to perform the settlement agreement in its continuing course of conduct with the Cassells under Rule 404(b), Rules of Evidence, 17A A.R.S. (1986 Supp.). We find no error.

## PRECLUSION OF EVIDENCE OF GALLAGHER AGREEMENT

The morning of trial the Cassells settled with Paulin Motor Company. Paulin was to pay the Cassells a "loan advance" and was to receive the 1983 Cadillac from the Cassells. The case then proceeded against GMC only, and the jury was instructed that it was not to consider Paulin's absence from the case. GMC complains because the trial court precluded it from presenting evidence on either the fact or the terms of the settlement between Paulin and the Cassells, citing *Ring v. Taylor*, 141 Ariz. 56, 685 P.2d 121 (App.1984) and *Sequoia Manufacturing Co. v. Halec Construction Co.*, 117 Ariz. 11, 570 P.2d 782 (App.1977). Those cases hold that the trial judge has considerable discretion to decide whether or not to admit evidence of a settlement agreement.

■ In this case, no employee or manager of Paulin Motor testified at trial. Only Paulin's former attorney testified. GMC has presented nothing which would indicate any fraud or collusion between Paulin and the Cassells. The trial court has wide discretion in determining whether to admit evidence of "Gallagher agreements" even when fraud or collusion has been alleged. We find no abuse of discretion in the trial court's ruling.

## MOTION FOR MISTRIAL

During the course of the trial, GMC submitted a written motion for mistrial complaining about the trial court's ruling precluding evidence of the settlement between Paulin and the Cassells and permitting evidence of the events leading to the settlement agreement in issue. We have already disposed of those issues.

Additionally, GMC complained because the Cassells' attorney had referred to the car they purchased as a "lemon" in voir dire. The transcript of the jury voir dire has not been provided to us so we are unable to comment on that point. See *Rancho Pescado, Inc. v. Northwestern Mutual Life Insurance Co.*, 140 Ariz. 174, 680 P.2d 1235 (App.1984). GMC has failed to cite us to anything in the record which would support its claim that "[p]laintiffs' counsel persisted in his efforts to prejudice the jury by repeated reference to the vehicle as 'a lemon,' and other derogatory terms." We find no error.

## MOTION FOR NEW TRIAL

GMC bases its complaint about the denial of its motion for new trial on its previous arguments. Therefore, we need not address it.

## ATTORNEY'S FEES

■ Finally, GMC contends it was improper for the trial court to award the Cassells attorney's fees pursuant to A.R.S. § 12-341.01(A), arguing that since the jury awarded punitive damages for conversion, the case is not one arising out of a contract. Since we are reversing the punitive damages award, the remaining compensatory award was clearly based on breach of contract, and the award of attorney's fees was proper.

The compensatory damage award is affirmed, and the punitive damage award is reversed.

HATHAWAY, C.J., and HOWARD, P.J., concur.

## SUPPLEMENTAL OPINION ON MOTIONS FOR RECONSIDERATION DENIED

FERNANDEZ, Judge.

General Motors Corporation, in a motion for reconsideration, contends that the compensatory damage award must fall along with the punitive damage award. GMC argues that it cannot be ascertained with certainty whether the compensatory award was based on breach of contract or on conversion since both theories were submitted to the jury. We disagree.

A review of the jury instructions that were given in this case reveals that the instructions on the elements of damage for a compensatory award were all based on breach of contract. The only instruction that was given with regard to damages based on conversion related solely to punitive damages. Hence, we properly sustained the compensatory damage award, and the motion for reconsideration is denied. Appellees' motion for reconsideration is also denied.

HATHAWAY, C.J., and HOWARD, P.J., concur.