Filed 10/16/20  Tedesco v. Wells Fargo Bank, N.A. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THOMAS S. TEDESCO, | |
| Plaintiff and Appellant, | E070407 |
| v. | (Super.Ct.No. PSC1704669) |
| WELLS FARGO BANK, N.A. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  James T. Latting, Judge. Affirmed.

Herzog, Yuhas, Ehrlich & Ardell, Ian Herzog, Evan D. Marshall; Law Offices of Joseph D. Davis and Joseph D. Davis for Plaintiff and Appellant.

McGuireWoods, Leslie Mark Werlin and Alicia A. Baiardo for Defendants and Respondents.

1

Plaintiff and appellant Thomas S. Tedesco[1] (Thomas), by his guardian ad litem Stephen Carpenter, appeals from two judgments of dismissal entered on April 5, 2018, after the trial court sustained the demurrers of defendants and respondents Wells Fargo Bank, N.A., and Michael A. Bas (collectively the bank defendants), without leave to amend, to Thomas's first amended complaint (FAC).  The FAC alleged causes of action for, inter alia, negligence, fraud, and breach of fiduciary duty based on the bank defendants' transfer of control of an account containing some $30 million (the funds), belonging to a limited partnership of which Thomas was the general partner.

On appeal, Thomas contends the bank defendants:  (1) breached the duty of due care owed to him as a depositor (breach of fiduciary duty); (2) negligently and wrongfully transferred control of the funds (conversion); and (3) knew or should have known the documents presented to Wells Fargo did not provide a valid basis to transfer control of the funds (financial elder abuse).  As to Bas, Thomas contends he:  (1) is liable for cancellation and rescission of a series of documents, which transferred control of the funds (cancellation/rescission); (2) breached the duty of care by transferring control of the funds (negligence); (3) participated in the manufacturing of fraudulent documents used to transfer control of the funds (fraud); and (4) was properly joined in the claim for declaratory relief.  Thomas further contends the trial court erred in denying him leave to amend.  We affirm.

---

[1] We refer to the Tedesco family members by their first names to avoid confusion. We mean no disrespect in doing so.  (*Estate of O'Connor* (2018) 26 Cal.App.5th 871, 875, fn. 2.)

2

## I.  PROCEDURAL BACKGROUND AND FACTS

On July 28, 1988, Thomas and Wanda created the Tedesco Family Trust.  In 1993, Thomas was the sole general partner and owner of the controlling one percent general partnership interest, and 98 percent limited partnership interest, in TW Tedesco Properties, L.P., a California limited partnership (Tedesco Properties).[2]  Following Wanda's death in 2002, the Tedesco Family Trust was divided into five separate trusts, one of which is the living trust, which was restated in a complete amendment and restatement dated February 11, 2011.  On an annual basis, Thomas gifted approximately one-half percent interest in Tedesco Properties to his daughters, Laura K. White, Julie M. Bas, and Sandra L. Kay.  Thomas also transferred his interest in Tedesco Properties to his living trust and, therefore, remained the beneficial owner.

On December 13, 2012, Thomas sold a 12.17 percent limited partnership interest in Tedesco Properties to himself as trustee of the living trust.  On December 26, 2012, he gifted his one percent general partnership interest in Tedesco Properties to W. Mae, LLC, which is held by his daughters, and gifted 11.7 percent of his limited partnership interest in Tedesco Properties to his daughters' trusts.  A "Seventeenth Amendment to the Agreement of Limited Partnership of TW Tedesco Properties" was executed and filed to reflect these actions.

In early 2013, Thomas became "seriously ill and underwent two surgeries requiring general anesthesia in or about April 2013."  During the following year, he was

---

[2] Wanda owned the remaining one percent limited partnership interest.

of "diminished health and mental capacity, and was reliant in part upon his family members, including [his daughters], to assist him in his business and financial affairs. Because of his temporarily diminished health and vitality, [he] was susceptible to the undue influence of others and unable to fully care for his own finances, to understand the influence of persons seeking to have him transfer his funds or assets or control of his property against his self-interest, or to resist fraud." Effective June 5, 2013, Thomas resigned as trustee of the living trust, and his daughters became successor trustees.

On August 25, 2017, Thomas (who was then 91 years old) initiated this action alleging various misdeeds by his daughters, his former attorneys, and the bank defendants, regarding his ownership interest in Tedesco Properties and his various trusts. More specifically, Thomas claimed his daughters and others participated in the manufacture of documents, which were used to transfer the controlling interest in Tedesco Properties to his daughters and entities controlled by his daughters. By way of the FAC filed on October 20, 2017, Thomas alleged three causes of action against Wells Fargo (negligence, financial elder abuse, & conversion) and seven causes of action against Bas (cancellation/rescission of documents, breach of fiduciary duty, financial elder abuse, fraud/misrepresentation, negligence, conversion, & declaratory relief). Thomas contends the bank defendants breached their fiduciary duties by failing to (1) contact him, (2) take any measure to assure the validity of the documents transferring his control and interest in Tedesco Properties, along with the funds, and (3) investigate the documents' authenticity or legal validity.

On January 10, 2018, both Wells Fargo and Bas demurred to the FAC; they primarily argued they owed no duty of care to Thomas, and he cannot establish they caused him harm. After hearing the matters, the trial court sustained both demurrers without leave to amend. Thomas appeals.

## II. DISCUSSION

### A. Preliminary Matters.

#### 1. Thomas's standing.

Before we address the merits of the issues raised, we acknowledge the bank defendants' contention that Thomas lacks standing to "sue for any claimed damage to, loss, or impairment of Partnership property" because Tedesco Properties, not Thomas, is the aggrieved party. The bank defendants argue an individual partner may not sue an outsider "for damage to 'his' beneficial interest in the partnership property." (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 60 ["The property was the partnership's. The [general and limited partners] could not have sued individually for damage to their individual 'beneficial interest' in partnership property . . . ."].) Likewise, they assert an individual partner may not sue on behalf of the partnership when his or her claims are individual in nature and not derivative. (*Everest Investors 8 v. McNeil Partners* (2003) 114 Cal.App.4th 411, 424 ["A partnership is an entity separate and apart from the partners of which it is comprised, and it is the partnership entity which owns its assets, not the partners."]; see *id*. at pp. 425-429.)

In response, Thomas asserts the bank defendants "mischaracterize [his] interest in and standing with regard to the subject bank account" because he "has an enforceable

5

interest and standing as the real general partner, as the sole life beneficiary of the trust which owns the partnership, and as the victim of a scheme to destroy his estate plan and personal financial autonomy." Thomas cites to *Everest Investors 8 v. McNeil Partners*, *supra*, 114 Cal.App.4th 411, and argues that since his "daughters as ostensible general partners and tort-feasors are obviously not going to bring an action to restore [his] possession and control of the account, or to restore funds which they wrongfully withdrew, [he] has the right to enforce a claim which the limited partnership possesses against others."

Arguably, since Thomas's claims are individual in nature, he lacks standing.[3] Nonetheless, we do not decide the standing issue in this appeal because we choose to address the merits of the issues raised by Thomas.

        2.     *Mootness.*

On September 16, 2020, this court was informed that on July 27, 2020, the trial court dismissed the entire underlying action as to all parties and all claims with prejudice. On September 29, the bank defendants requested judicial notice of the lower court's September 28 order denying Thomas's motion to vacate the dismissal. The bank defendants contend the appeal should also be dismissed as moot. In the interest of

---

[3] See also our prior nonpublished opinion in *Wilson v. Tedesco* (*Conservatorship of Tedesco*) (Sept. 19, 2019, E070316) [nonpub. opn.], mod. Oct. 7, 2019. On the court's own motion, we take judicial notice of our prior opinion. (Evid. Code, § 452, subd. (d); Cal. Rules of Court, rule 8.1115(b)(1).) "It is well accepted that when courts take judicial notice of the existence of court documents, the legal effect of the results reached in orders and judgments may be established." (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 185.)

6

justice, we choose to address the merits of the issues. We therefore deny the request for judicial notice and will not decide the mootness issue.[4]

### B. The Bank Defendants' Demurrer

Thomas contends the FAC sufficiently pled causes of action against the bank defendants. Alternatively, he contends the trial court abused its discretion in denying him leave to amend. We reject his contentions and affirm.

#### 1. Standard of review.

"A 'demurrer tests the pleading alone, and not the evidence or the facts alleged. Thus, a demurrer will be sustained only where the pleading is defective on its face.' [Citation.] On appeal from a judgment of dismissal based on an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' [Citation.] We may also consider matters that have been judicially noticed, but must disregard allegations that are contrary to law or facts judicially noticed. [Citations.] Alternatively stated, '[w]e treat the demurrer as admitting all material facts properly pleaded but not contentions, deductions or conclusions of fact or law.' [Citation.] [¶] . . . [¶] We review a court's denial of leave to amend on sustaining a demurrer for abuse of discretion. [Citation.] On appeal, the appellant must show there is a reasonable possibility the defect in the complaint can be cured by amendment." (*Citizens for a Responsible Caltrans Decision v. Department of Transportation* (2020)

---

[4] The court has reviewed respondents' request for judicial notice filed September 29, 2020. The request is denied.

7

46 Cal.App.5th 1103, 1116-1117.)  We may consider exhibits attached to a complaint when reviewing a demurrer, and "[i]f facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence."  (*Holland v. Morse Diesel Internat.*, *Inc.* (2001) 86 Cal.App.4th 1443, 1447.)

      2.    *The orders sustaining the demurrers were proper.*

      a.    Negligence and breach of fiduciary duty against Wells Fargo and Bas.

Thomas asserts Bas has a "confidential and fiduciary relationship" by reason of his family relationship (Bas is married to one of Thomas's daughters).  He further asserts the existence of a fiduciary duty by reason of the fact Tedesco Properties "maintained one or more bank accounts" with Wells Fargo, holding in excess of $30 million.  Thus, he contends the bank defendants breached their fiduciary duty by failing to contact him or otherwise take any measure to assure the validity of the documents, which transferred signatory power and control over the bank funds to W. Mae, LLC, and its managers (Thomas's daughters).  On appeal, Thomas maintains the FAC properly alleged breach of the duty of due care owed to depositors and customers.  We disagree.

"'A fiduciary relationship is "'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party.  Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's

8

knowledge or consent . . . .'" [Citations.] [¶] "Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal.""" (*Hodges v. County of Placer* (2019) 41 Cal.App.5th 537, 546-547.) However, "the relationship between a bank and its depositor is not fiduciary in character. [Citation.] '"The relationship of bank and depositor is founded on contract," [citation] which is ordinarily memorialized by a signature card that the depositor signs upon opening the account. [Citation.] This contractual relationship does not involve any implied duty "to supervise account activity" [citation] or "to inquire into the purpose for which the funds are being used"'" (*Das v. Bank of America*, *N.A.* (2010) 186 Cal.App.4th 727, 741 (*Das*); see *Chazen v. Centennial Bank* (1998) 61 Cal.App.4th 532, 538 [bank has no duty to police their fiduciary accounts]; *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1150 (*Casey*) [Under California law, a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder.].)

Under these principles, Thomas's allegations regarding the bank defendants' conduct in connection with documents transferring signatory power and control over the bank funds to W. Mae, LLC, and its managers (Thomas's daughters) fail to state claims for breach of fiduciary duty or negligence. The FAC alleges no facts suggesting the bank defendants undertook a special fiduciary duty to him.[5] Although Thomas alleges he did not execute the "*Amendment to Certificate of Limited Partnership*," and the bank

---

[5] Tedesco Properties, not Thomas, is the owner of the Wells Fargo account, and Thomas was not the sole owner of the partnership.

defendants made no "attempt to contact [him] or otherwise take any measure to assure the validity of the transfer of the general partnership interest," the documents attached to the FAC, which we may consider, bear Thomas's signature. Nothing in the FAC suggests the bank defendants discharged their contractual duties in an unreasonable manner or knew of the specific primary wrong they are accused of substantially assisting. When presented with the documents, the bank defendants followed the instructions and transferred control of the funds. (See discussion, *infra*.) Thus, Thomas's allegations establish no claim against Wells Fargo or Bas based on breach of fiduciary duty or negligence.

b.      Conversion against Bas and Wells Fargo.

The FAC alleges Bas and Wells Fargo committed the tort of conversion because they have approximately $30 million in "their control and possession," Thomas has the "immediate right of possession," and they improperly transferred control of these funds to his daughters and their entities. On appeal, Thomas maintains the bank defendants' unauthorized transfer of the funds constitutes conversion. We conclude the FAC fails to state a cause of action for conversion.

"'"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."'" (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208; see *Gruber v. Pacific States Sav. & Loan Co.* (1939) 13 Cal.2d 144, 148 [Conversion is any act of dominion wrongfully exerted over the

10

personal property of another.].)  It "is an intentional tort.  [Citation.]  'The act [constituting conversion] must be knowingly or intentionally done, but a *wrongful intent* is not necessary.  [Citations.]  Because the act must be knowingly done, "neither negligence, active or passive, nor a breach of contract, even though it result[s] in injury to, or loss of, specific property, constitutes a conversion."'"  (*Multani v. Knight* (2018) 23 Cal.App.5th 837, 853-854.)

Here, the funds are the property of Tedesco Properties, not Thomas personally, and the FAC identifies defendants who have "intentionally and substantially interfered with plaintiff's property by fraudulently obtaining control of the [Tedesco Properties] accounts and funds and diverting said funds into defendants' personal accounts, and by preventing plaintiff from having access to the money."  But the FAC does not allege either Wells Fargo or Bas asserted dominion or control over the funds.  (Cf. *Simonian v. Patterson* (1994) 27 Cal.App.4th 773, 781-782 [Under the facts as pled, there was no intention on defendant's part to "'convert the owner's property, or to exercise some act of ownership over it, or to prevent the owner's taking possession of his property.'"].)  Also, as we state in our discussion of Thomas's other causes of action, nothing in the FAC suggests the bank defendants committed a wrongful act in honoring the legal documents, which effected the transfer of control of the funds, and neither Wells Fargo nor Bas owed a common law fiduciary duty to Thomas.  We therefore conclude, as a matter of law, Thomas cannot allege a cause of action for conversion.

11

c. Financial elder abuse against Wells Fargo and Bas.

The FAC asserts the bank defendants violated Welfare and Institutions Code section 15610.30 and committed financial abuse upon an elder by secreting, appropriating, and retaining Thomas's assets after demand had been made, and they engaged in undue influence as defined in Civil Code section 1575. On appeal, Thomas contends the bank defendants "certainly knew and should have known that [neither] an unsigned 'assignment' [nor the unsigned 'Amendment'] was . . . a valid basis for transfer of an account." Thus, he maintains the FAC states a claim against them for financial elder abuse. We disagree.

As defined by statute, financial elder abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud" or "assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud." (Welf. & Inst. Code, § 15610.30, subd. (a)(1), (a)(2).)

Here, the claim for financial elder abuse is dependent on the bank defendants' actual knowledge of the allegedly fraudulent documents. Thomas repeatedly asserts the bank defendants relied upon "unsigned" documents to assist his daughters in the wrongful and fraudulent transfer of control of the funds. However, included in the exhibits attached to the FAC is the "Assignment of General Partner's Interest" and an "Amendment to Certificate of Limited Partnership," both of which were signed by Thomas, and the latter was filed with the California Secretary of State. According to

12

these documents, Thomas agreed to the transfer of his one percent general partnership interest in Tedesco Properties to W. Mae, LLC. More importantly, Thomas signed the "Assignment of General Partner's Interest" on December 26, 2012 (prior to his "diminished health and mental capacity" in 2013), and it was made "effective immediately." Again, nothing in the FAC suggests the bank defendants discharged their contractual duties in an unreasonable manner or knew of the specific primary wrong they are accused of substantially assisting. (*Das*, *supra*, 186 Cal.App.4th at p. 745 [When "a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have 'assisted' the financial abuse only if it knew of the third party's wrongful conduct."].)

Although the FAC alleges the bank defendants "knew or should have known" the fraudulent nature of the documents, such abuse allegation, without more, does not give rise to tort liability. We are tasked with "carefully scrutiniz[ing] whether [Thomas] has alleged the bank [defendants] had actual knowledge of the underlying wrong it purportedly aided and abetted." (*Casey*, *supra*, 127 Cal.App.4th at p. 1152.) Given the exhibits attached to the FAC, which contain Thomas's signature, we conclude the FAC's general allegation that the bank defendants knew the fraudulent nature of the documents does not sufficiently plead that they had actual knowledge of the documents' allegedly fraudulent nature.

"In reviewing the sustaining of a demurrer, 'we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.'" (*Casey*, *supra*, 127 Cal.App.4th at p. 1153.) Applying that standard, the FAC fails to state a cause of action

13

for financial elder abuse.  Consequently, we conclude the trial court properly sustained the demurrer to this cause of action.

>           d.        Cancellation/rescission and declaratory relief against Bas.

Thomas contends his daughters and Bas manufactured documents to effect the transfer of Thomas's interests in Tedesco Properties to, inter alia, his daughters and W. Mae, LLC, and the documents are invalid and void.  On appeal, Thomas argues Bas is liable for cancellation and rescission of these documents, and he was properly joined in the claim for declaratory relief.  Not so.

Both causes of action are based on contract.  Since there is no contract between Thomas and Bas, both claims must fail.  Under the basic principles of law, a contract is a bargained-for exchange.  (*Bard v. Kent* (1942) 19 Cal.2d 449, 452.)  """[T]he consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise.""" (*Levy v. Bellmar Enterprises* (1966) 241 Cal.App.2d 686, 691.)  Here, the contracts that accomplished the transfer of property or Thomas's interest in Tedesco Properties were between Thomas, on the one hand, and his daughters or another entity, on the other.  Bas was not a party to any of the documents.  As such, he is not the proper target of Thomas's cause of action for rescission.  (See *Schauer v. Mandarin Gems of California, Inc.* (2005) 125 Cal.App.4th 949, 959-960 ["Civil Code section 1689 limits grant of rescission rights to the contracting parties. . . .  [Defendant], not having participated in the agreement, not having undertaken any duty or given any consideration, is a stranger to the agreement, with no legitimate interest in voiding it."];

14

Civ. Code, § 1688 [rescission extinguishes a contract between the parties].)  In short,

Thomas failed to state claims for cancellation/rescission and declaratory relief.[6]

>               e.        Fraud and misrepresentation against Bas.

In his fraud cause of action, Thomas alleged that "defendants misrepresented the

nature, substance and authenticity" of the documents, "inducing [him] to execute [them],"

and "misrepresenting the authenticity of [his] signature and the validity of his consent to

the transfer [of his] interests and control of [Tedesco Properties] to financial institutions,

to the Secretary of State and to [him] and other persons."  On appeal, Thomas faults the

trial court for not considering "Bas' liability for participating in the manufacture of

fraudulent documents and exploitation of the family relationship as alleged."  He further

asserts his fraud claim is "pled with as much specificity as could reasonably be expected

from [him] in these circumstances."  We conclude the trial court properly sustained Bas's

demurrer to this cause of action.

"Fraud must be pleaded with specificity, to provide the defendants with the fullest

possible details of the charge so they are able to prepare a defense to this serious attack.

To withstand a demurrer, the *facts* constituting every element of the fraud must be

alleged with particularity, and the claim cannot be salvaged by references to the general

---

[6] By way of the declaratory relief cause of action, Thomas seeks a declaration of rights as to the funds in light of his cancellation/rescission of the allegedly fraudulent documents.  Since the claim for declaratory relief is inextricably intertwined with the cancellation/rescission cause of action, the claim fails for the same reason.  (See *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800 ["Where a trial court has concluded the plaintiff did not state sufficient facts to support a statutory claim and therefore sustained a demurrer as to that claim, a demurrer is also properly sustained as to a claim for declaratory relief which is 'wholly derivative' of the statutory claim."].)

policy favoring the liberal construction of pleadings.  [Citation.]  Even in a case involving numerous oft-repeated misrepresentations, the plaintiff must, at a minimum, set out a representative selection of the alleged misrepresentations sufficient to permit the trial court to ascertain whether the statements were material and otherwise actionable." (*Goldrich v. Natural Y Surgical Specialties*, *Inc.* (1994) 25 Cal.App.4th 772, 782-783; see *Small v. Fritz Companies*, *Inc*. (2003) 30 Cal.4th 167, 184 ["'In California, fraud must be pled specifically; general and conclusory allegations do not suffice.'"].)

Thomas's cause of action for fraud and misrepresentation does not come close to the required specificity.  The FAC accuses 10 defendants (including a legal entity) of misrepresentation and concealment.  However, it avers no facts as to what was said or to whom or in what manner.  (See *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 73 [Plaintiff must plead "*facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'"].)  We do not know how Bas induced Thomas to execute the documents; when this conduct occurred; where it occurred; or by what means Bas employed to induce Thomas to sign the documents.  Absent this specificity, Bas is unable to defend himself.  (See *Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 901 ["The rationale for the rule requiring specificity is that allegations of fraud are serious, and the defendant is entitled to receive sufficient details in order to prepare his defense."].)  Having failed to satisfy the strict pleading requirements, Thomas's cause of action for fraud and misrepresentation fails.

### 3. *Sustaining the demurrer without leave to amend.*

Finally, we consider the trial court's decision to deny Thomas leave to amend the FAC. Thomas asserts he could amend the FAC to allege the subject account was an investment account "under the tutelage of Wells [Fargo's] investment advisor Michael Bas," and thus enhanced the duty of care owed. However, Thomas fails to state how this additional allegation would overcome the obstacles of the documents bearing his signature and the bank defendants' lack of knowledge of any alleged wrongdoing. For the trial court to permit an amended pleading, the plaintiff must "clearly and specifically" set forth the legal authority for the claims they contend they can allege, the elements of each of those claims, and the specific factual allegations that would establish each of those elements. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.) Thomas made no attempt to meet this burden. Accordingly, the causes of action against the bank defendants were properly disposed of at the pleading stage. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [It is the plaintiff's burden to prove a reasonable possibility that a pleading defect could be cured by a further amendment.].)

17

### III.  DISPOSITION

The judgments of dismissal for Wells Fargo and Bas are affirmed.  Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER _____
J.

We concur:


RAMIREZ _____
P. J.


SLOUGH _____
J.


18